[L. A. Nos. 22495-22497. In Bank. Dec. 23, 1953.]

PACIFIC HOME (a Corporation), Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

Newby, Holder & Newby and Charles R. Newby for Appellant.

Harold W. Kennedy, County Counsel, Arvo Van Alstyne and Gordon Boller, Deputy County Counsel, Ray L. Chesebro and Roger Arnebergh, City Attorneys (Los Angeles), and Louis A. Babior, Deputy City Attorney, for Respondents.

SPENCE, J.—Plaintiff brought these three actions to recover taxes paid under protest, for the respective tax years 1946-1947, 1947-1948, and 1948-1949 on certain properties which it claims to be exempt under the welfare exemption law. (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.) The trial court determined that plaintiff did not meet the statutory requirement of irrevocable dedication of its properties to exempt purposes. (Rev. & Tax. Code, § 214, subd. [6].) From judgments accordingly entered in defendants' favor in each action, plaintiff appeals. Upon consideration of the undisputed facts, we have concluded that the trial court improperly denied the tax relief sought.

Plaintiff is a nonprofit California corporation, having no capital stock and with a membership consisting exclusively of the members of the Southern California-Arizona Annual

Conference of the Methodist Church. It is organized to "establish, maintain, support, and operate a home or homes for worthy aged and infirm persons . . . and carry on such other charitable work in connection therewith as may be consistent" with its history and purposes. During the tax years in question and under authority granted by the Discipline of the Methodist Church, plaintiff operated and maintained such a home in Los Angeles, with the number of inmates ranging from 350 in 1946 to 375 in 1948. Admission to the home is on a single-fee life care contract with the entry charge determined by the life expectancy of the applicant and the accommodations selected. The rate is fixed with the intent that plaintiff will "break even" on the operation. Preference for admission to the home is given to active members of some church and, if possible, to members of the Methodist Church who are selected primarily because of their record of service as missionaries, ministers, teachers, and social workers. A substantial portion of plaintiff's reserve and endowment funds is invested in income-producing properties. An annual contribution of $2,000 was made in these tax years to the retired ministers' fund of the above-mentioned conference, a "charitable fund" under stipulation of the parties. Throughout these years plaintiff operated at a loss.

The parties stipulated and the court found that plaintiff is not organized for profit; that no part of its net earnings inures to the benefit of any private shareholder or individual; and that the properties were used exclusively in the maintenance and operation of a home for the aged, and to house members and necessary employees of the home. The court also found that the properties were not used or operated by plaintiff or by any other person for profit regardless of the purposes to which the profit is devoted; and that the properties on liquidation, dissolution, or abandonment of plaintiff would have inured to the benefit of a fund, foundation, or corporation organized and operated for religious, hospital or charitable purposes within the meaning of subdivision 6 of section 214 of the Revenue and Taxation Code. However, the court further found that on the first Mondays of March 1946, 1947, and 1948, the properties were "not irrevocably dedicated to religious, charitable, or hospital purposes." The sole question presented on this appeal concerns the propriety of this latter determination.

Section 214, subdivision (6), of the Revenue and Taxation Code provides that property used exclusively for re-

ligious, hospital, scientific or charitable purposes and owned and operated by a corporation organized and operated for any of such purposes is exempt from taxation if the property is "irrevocably dedicated" to any of these purposes and "upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person" but only to "a fund, foundation or corporation organized and operated for" any of such purposes. A "strict but reasonable construction" must be given to this language to the end that the tax concession will be neither enlarged nor extended beyond the plain meaning of the words used. (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 736 [221 P.2d 31, 15 A.L.R.2d 1045]; *Pasadena Hospital Assn.* v. *County of Los Angeles*, 35 Cal.2d 779, 785 [221 P.2d 62].) ■ Plaintiff has the burden of showing that it clearly comes within the terms of the exemption (*Cedar of Lebanon Hospital* v. *County of Los Angeles, supra*, p. 734), and any doubt must be resolved against the right thereto. (*Sutter Hospital* v. *City of Sacramento*, 39 Cal.2d 33, 39 [244 P.2d 390].)

■ The requirement of irrevocable dedication is concerned with ultimate purposes rather than with present uses. Thus, the claimant's manner of operation and its use, past or present, of its properties are wholly immaterial. ■ The critical factor is its powers with respect to its properties; and these powers, in the case of a corporate claimant, must ordinarily be ascertained from its articles of incorporation. ■ If such powers permit the ultimate and permanent diversion of all corporate assets to nonexempt purposes, there cannot be said to be an irrevocable dedication of such assets to exempt purposes and the exemption must be denied. (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra*, 35 Cal. 2d 779, 785-787.)

■ According to its articles of incorporation, plaintiff was formed for the purpose of maintaining and operating "a home or homes for worthy aged and infirm persons," and providing and carrying on such other "necessary and convenient" activities and "such other charitable work in connection therewith as may be consistent with [its] history and purposes." It is empowered to provide from its funds and pay over an annual amount to the Southern California-Arizona Annual Conference of the Methodist Church for the benefit of the retired ministers' fund as mutually agreed (stipulated as a charitable contribution). It is permitted to buy, sell, receive,

or otherwise deal with real and personal property as "is necessary, auxiliary, incidental or convenient to [its] needs and purposes"; to borrow and lend money; to enter into such contracts as "convenient or necessary to carry out [its] purposes and objects"; to receive bequests and devises for its own use and upon trust; to "do all and everything necessary, suitable and proper for the accomplishment of [its] purposes and anything which [its] Board of Directors . . . may deem conducive or expedient for the proper conduct of [the] Home and for the carrying out of [its] purposes." It is further recited that the "foregoing clauses shall be construed both as objects and powers and . . . that the foregoing enumeration of specific powers shall not be held to limit or restrict in any manner the powers of this corporation." The laws of the State of California are declared to govern the conduct of the corporation and so far as thereby permitted, it is subject to the "uses and Discipline of the Methodist Church." In the event of dissolution, all of the corporation's assets remaining after payment of its obligations are declared "subject to the disposition and control of the Southern California-Arizona Annual Conference of the Methodist Church or its successors."

Reasonably construed as a whole, plaintiff's articles indicate its purpose to be the maintenance and operation of a charitable home for worthy aged and infirm persons, and that the conduct of a noncharitable home would be contrary to its authority. Moreover, the parties stipulated, as shown by the evidence, that plaintiff's home satisfied the requirement of a charitable purpose under the welfare exemption law. (See *Fredericka Home* v. *County of San Diego,* 35 Cal.2d 789, 792-795 [221 P.2d 68].) ■ Likewise, as stipulated by the parties and found by the court, plaintiff's authority to make annual contributions to the retired ministers' fund was charitable within the meaning of the welfare exemption law. ■ The further enumerated powers of plaintiff to buy and sell property, to make contracts, to receive devises and bequests, to borrow money, to contract debts and to do "all other acts necessary or expedient for the administration of the affairs and attainment of the purposes of the corporation" are all powers which a nonprofit corporation has by statute (Corp. Code, § 9501), and which plaintiff would possess without their recital in its articles. (*Davis* v. *Pacific Studios Corp.,* 84 Cal.App. 611, 615 [258 P. 440].) ■ The statement in the articles that the "enumeration of specific

powers shall not be held to limit or restrict in any manner the powers of this corporation" does not purport to be a general grant of power. Rather it appears to be a precautionary clause to signify that the incidental powers reasonably necessary to effectuate plaintiff's main purposes shall not be limited by their specific enumeration. (See 7 Fletcher Cyclopedia Corporations, Perm. ed., ch. 42, § 3648, p. 780.) It does not give plaintiff any powers except such as are specifically conferred by the articles and those given by statute. Such powers are not unlimited powers, but are subordinate to plaintiff's main objects and purposes, which are wholly charitable.

Defendants claim, however, that the properties in question were not "irrevocably dedicated" to exempt purposes for the reason that plaintiff's articles of incorporation provide that in the event of dissolution, all its corporate assets shall pass to the Southern California-Arizona Annual Conference of the Methodist Church; and that the articles of incorporation of the Conference provide that it is "organized for religious, charitable, *social* and *educational* purposes." (Emphasis added.) Defendants argue that all of plaintiff's assets may therefore be ultimately and permanently diverted by the successor corporation to social and educational purposes, which purposes are not exempt purposes under the so-called welfare exemption. (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra,* 35 Cal.2d 779, 786; *Moody Institute of Science* v. *County of Los Angeles,* 105 Cal.App.2d 107, 109 [233 P.2d 51]; *Goodwill Industries* v. *County of Los Angeles,* 117 Cal.App.2d 19, 23-24 [254 P.2d 877].) This argument, however, ignores the trust status of the properties acquired by plaintiff whose purposes, as above indicated, were solely charitable in nature.

In the recent case of *In re Los Angeles County Pioneer Society,* 40 Cal.2d 852 [257 P.2d 1], this court had occasion to consider the question of the status of property acquired by a corporation organized for charitable purposes. *Estate of Clippinger,* 75 Cal.App.2d 426, 433 [171 P.2d 567], was there quoted with approval as follows (40 Cal.2d 860): "[A] devise to a society organized for a charitable purpose without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created." It was therefore concluded that such property was held upon a charitable trust, and that the

duty to protect such trust was placed upon the attorney general. (40 Cal.2d 861; Corp. Code, § 10207.)

Similarly, all the assets of a corporation organized solely for charitable purposes must be deemed to be impressed with a charitable trust by virtue of the express declaration of the corporation's purposes, and notwithstanding the absence of any express declaration by those who contribute such assets as to the purpose for which the contributions are made. In other words, the acceptance of such assets under these circumstances establishes a charitable trust for the declared corporate purposes as effectively as though the assets had been accepted from a donor who had expressly provided in the instrument evidencing the gift that it was to be held in trust solely for such charitable purposes. It follows that neither plaintiff nor its successor could legally divert its assets to any purpose other than charitable purposes, and said property was therefore "irrevocably dedicated" to exempt purposes within the meaning of the welfare exemption.

There remains for consideration the related requirement that upon dissolution the property must "not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes." (Rev. & Tax. Code, § 214, subd. [6].) It is sufficient here to point out that the successor corporation was organized for charitable purposes as well as for religious, social and educational purposes, and it is significant that the statute does not require that the corporation to whose benefit the assets will inure shall be organized exclusively for any of the four alternate exempt purposes. As the successor corporation was organized for charitable purposes, and as it would be required to continue to devote plaintiff's assets to charitable purposes under the trust theretofore impressed upon such assets, all the requirements of subdivision 6 of section 214 of the Revenue and Taxation Code have been met.

Defendants insist that the statutory condition of irrevocable dedication of property presupposes an express declaration to that effect, appearing either in the articles of incorporation or some other writing affecting the powers of the recipient organization with respect to its property. But the statute does not so provide. If such had been the intention of the Legislature, undoubtedly it would have so stated. Rather, as noted in *Pasadena Hospital Assn.* v. *County of Los Angeles, supra,* 35 Cal.2d 779, at page 786, the "requirement

of irrevocable dedication is ordinarily to be determined by ascertaining the powers of the owner with respect to its assets, including its properties and the proceeds thereof," and to that end the articles of the claimant corporation were carefully examined without regard for the absence of an irrevocable dedication clause such as was later included as an amendment. (See, also, *Moody Institute of Science* v. *County of Los Angeles, supra,* 105 Cal.App.2d 107, 108-109; *Goodwill Industries* v. *County of Los Angeles, supra,* 117 Cal.App. 2d 19, 23-24.) Here, as above stated, plaintiff's articles of incorporation limited its purposes to one of those declared exempt, the operation of a charitable home. When plaintiff accepted property under such articles of incorporation, the property became impressed with a charitable trust and was therefore irrevocably dedicated to the trust purpose. It would serve no useful purpose, and the Legislature did not require, that the recipient corporation must also expressly declare in its articles of incorporation or some other writing that its assets are "irrevocably dedicated" to exempt purposes.

The above-cited Pasadena Hospital, Moody Institute, and Goodwill Industries cases are clearly distinguishable. In each of those instances the recipient corporation was organized and operated for both exempt and nonexempt purposes, and the property in question was acquired without any dedication to any one of its several purposes, exempt or nonexempt. Consequently, though the property in fact may have been used for exempt purposes at the time that the welfare exemption was sought, it could not be said that it had been irrevocably dedicated to exempt purposes when the corporate powers and purposes of the claimant corporation permitted it to divert the property or its proceeds to nonexempt purposes. The various broadly stated purposes, exempt and nonexempt, of the respective recipient corporations at the time of acquisition of the property prevented the imposition of a trust on the property for hospital (Pasadena Hospital Assn.), religious (Moody Institute), or charitable (Goodwill Industries) purposes. But here when plaintiff acquired the properties in question, its purposes as declared in its articles of incorporation were limited solely to exempt charitable purposes. Defendants further argue that plaintiff may amend its articles to include nonexempt as well as exempt purposes.

It is true that the welfare exemption law does not require that the corporate claimant renounce the right to amend its articles in this regard. However, if plaintiff were to so amend its articles, such action would not affect the trust status of property theretofore acquired. ██ Such property, which was acquired when plaintiff's articles were limited to charitable purposes, was thereby impressed with a trust for such purposes, and if such property subsequently should be diverted to newly-declared nonexempt purposes, the attorney general would have the duty to bring appropriate proceedings to enforce the trust. (*In re Los Angeles County Pioneer Society,* *supra,* 40 Cal.2d 852, 861.) ██ Only property acquired by plaintiff after the amendment of its articles so as to include nonexempt purposes would be subject to diversion to nonexempt purposes.

██ As the record has been here reviewed, the properties in question were, by the limitation of plaintiff's articles at the time of their acquisition, impressed with a trust for charitable purposes, which trust may be enforced against either plaintiff or the conference as its successor. We therefore conclude that plaintiff has met the requirements of subdivision 6 of section 214 of the Revenue and Taxation Code for the tax years in question and is entitled to the tax relief sought. ██ Since the facts are undisputed and the parties agree that a question of law only is presented, it is appropriate to reverse the judgments with directions. The parties stipulated as to the amounts in controversy.

The judgment in each action is reversed, with directions to the trial court to amend its findings of fact and conclusions of law in accord with the views expressed herein, and to enter judgment for plaintiff pursuant to the stipulation of the parties as to the amounts in controversy.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.