[Civ. No. 37167. Second Dist., Div. Four. Sept. 8, 1971.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

John D. Maharg, County Counsel, and DeWitt W. Clinton, Deputy County Counsel, for Defendant and Appellant.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Assistant City Attorney, and Norman L. Roberts, Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—We granted a rehearing in the above entitled case in order to give further consideration to the city's argument that it qualified under section 214.8 of the Revenue and Taxation Code. We conclude that

it does not, and, therefore, re-adopt our opinion as originally filed with some additions.

This is an action brought by the City of Los Angeles to recover local property taxes paid to the County of Los Angeles. The taxes were levied by the county, certain special districts, and a school district on property consisting of a youth camp (Decker Canyon Youth Camp) owned by the city outside of its territorial boundaries. Both the city and county agree that the property is not entitled to the government exemption contained in article XIII, section 1 of the California Constitution.[1] The city contends that it is eligible for the welfare exemption found in article XIII, section 1c of the California Constitution and in Revenue and Taxation Code section 214. The county submits that the tax was correctly levied and collected, in that the city does not qualify for the welfare exemption. The city duly filed its claim for welfare exemption which claim was denied. A timely claim for refund was filed and that claim was denied and the present action for a refund of $1,501.96 in taxes followed.

Both the city and the county filed motions for summary judgment in the trial court. The court denied the county's motion, struck its answer and entered a summary judgment in favor of the city. The county appeals from that judgment. For the reasons set forth below, we reverse the judgment and remand with directions to grant the motion made by the county.

The facts in this case are undisputed. In 1967 the city was, and still is, the owner of a parcel of property located in the Malibu area of the unincorporated territory of the County of Los Angeles. Said property is known as the Decker Canyon Youth Camp, having been obtained by the city by grant deed. The camp is operated by the recreation and parks department of the city exclusively for the purpose of furnishing a camp site to persons and organizations located both inside and outside the city limits. A nominal charge is made, designed to cover approximately one-third of the operating expenses of the camp, not including departmental overhead.

The welfare exemption contained in article XIII, section 1c of the California Constitution authorizes the Legislature to grant exemptions to charitable organizations. Section 1c provides: "In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt

---

[1]The pertinent portions of that section read as follows: " . . . further provided, that property . . . such as may belong to the United States, this state, or to any county, city and county, or municipal corporation within this state shall be exempt from taxation, except such lands and the improvements thereon located outside of the county, city and county or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county or municipal corporation; . . ."

from taxation all or any portion of property used exclusively for religious, hospital or *charitable purposes and owned by community chests, funds, foundations or corporations organized and operated for religious, hospital or charitable purposes,* not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." (Italics supplied.)

The Legislature has implemented this section of the state Constitution by the adoption of section 214 et seq. of the Revenue and Taxation Code. Of those sections, the provisions of section 214 and 214.8 are of particular importance.

Section 214 reads, in pertinent part, as follows: "Property used exclusively for . . . charitable purposes owned and operated by community chests, funds, . . , and operated for . . . charitable purposes is exempt from taxation if:

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(2) No part of net earnings of the owner inures to the benefit of any private shareholder or individual;

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(6) The property is irrevocably dedicated to . . . charitable . . . purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for . . . charitable purposes;

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law."

Section 214.8 reads as follows: "Except as provided in Section 213.7 [property of a voluntary fire department used exclusively for volunteer fire department purposes] and 231, [property leased to the government by a nonprofit corporation] the 'welfare exemption' shall not be granted to any organization which is not qualified as an exempt organization under Section 23701d of the Revenue and Taxation Code or Section 501(c)(3) of the Internal Revenue Code of 1954. This section shall not be construed to enlarge the 'welfare exemption' to apply to organizations qualified under Section 501(c)(3) of the Internal Revenue Code of 1954 but not otherwise qualified for the 'welfare exemption' under other provisions of this code."

Section 23701d of the Revenue and Taxation Code applies only to "Corporations organized and operated *exclusively* for . . . charitable . . . purposes." Section 501(c)(3) of the Internal Revenue Code of 1954, similarly authorized an exemption from federal income tax for "Corporations . . . organized and operated *exclusively* for . . . charitable purposes . . . ." (Italics supplied.)

■ Although the briefs and arguments have covered a wide scope, we conclude that, in light of the statutory provisions above quoted, we need not determine whether any municipal corporation, organized under the laws of this state, could ever qualify for the welfare exemption. It is clear that, even if we assume that some California city might so qualify, the City of Los Angeles does not.

The city admits that the Internal Revenue Service, in its Revenue Ruling 60-384, has determined that: "A state or municipality itself . . . would not qualify as an organization described in section 501(c)(3) since its purposes are clearly not exclusively those described in section 501(c)(3) of the Code." The city challenges that ruling on the ground that other rulings have held that an entity, otherwise qualified under section 501(c)(3), does not become disqualified merely because it conducts some collateral business enterprise which is incidental to and "in furtherance of" its exempt purpose. But the City of Los Angeles conducts at least three important activities which are not "charitable" by any definition. It operates a department of water and power which furnishes both water and electricity to the inhabitants of the city; it operates a harbor department; and it operates an elaborate airport system. None of these are the kind of incidental and collateral activities which, under the rulings cited to us and under *Pacific Home* v. *County of Los Angeles* (1953) 41 Cal.2d 844, 850-851 [264 P. 2d 539], and similar cases, do not detract from the charitable character of a corporation.

Secondly, the city argues that, even if the City of Los Angeles, as a whole, might not qualify under section 501(c)(3), the department of parks and recreation is an "autonomous agency," of the city which, under another portion of Ruling 60-384, is entitled to exemption. The language relied on is as follows: " . . . a wholly owned state or municipality which is a counterpart of an organization described in 501(c)(3) of the code such as a separately organized school, college, university, or hospital may qualify for the exemption under Section 501(c)(3) of the code . . . ."

But the department of parks and recreation is not a "separately organized" nor an "autonomous" agency of the City of Los Angeles. The department is an integral part of the city government. The members of its managing commission are appointed by the mayor and are confirmed by the city

council; they are removable by the same process and at the concurrent whim of those same officials. Many of its important actions are subject to review by the city council. Among such actions are: purchases of property (§ 170(b)(1) of the city charter), leases of park property for a term in excess of five years (§ 170(c) ), removal of land from park use (§170(d) ), subsurface parking leases (§ 178.1). Its operations are funded in part by appropriations from the general fund of the city (§ 173). The department of parks and recreation clearly does not come under the ruling relied on.

Under section 214.8 of the Revenue and Taxation Code, above quoted, an organization, in order to qualify for the welfare exemption, must satisfy *both* section 23701d of the Revenue and Taxation Code, and section 501(c)(3). Nowhere does the city suggest that it qualifies under the state section. Since the city qualifies under neither of the sections involved, it is barred by the express terms of section 214.8 from the benefits of the welfare exemption.

The judgment is reversed; the case is remanded to the superior court with directions to reinstate the county's answer, to grant its motion for summary judgment and to deny the city's motion.

Files, P. J., and Jefferson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 4, 1971.