[Civ. No. 29424. First Dist., Div. Two. June 22, 1972.]

JOHN TENNANT MEMORIAL HOMES, INC.,
Plaintiffs and Respondents, v.
CITY OF PACIFIC GROVE et al., Defendants and Appellants.

[Civ. No. 29425. First Dist., Div. Two. June 22, 1972.]

CALIFORNIA-NEVADA METHODIST HOMES et al.,
Plaintiffs and Respondents, v.
CITY OF PACIFIC GROVE et al., Defendants and Appellants.

(Two Cases.)

## COUNSEL

Theodore G. Morris for Defendants and Appellants.

John D. Gallaher, Stark, Stewart, Simon & Sparrowe, Franklin C. Stark, Robert C. Field and V. James Jackl for Plaintiffs and Respondents.

## OPINION

**TAYLOR, P. J.**—This is an appeal by the City of Pacific Grove and its tax administrator (hereafter City) in two companion cases[1] presenting identical questions of law. The City appeals from a judgment holding void and enjoining the enforcement of a City ordinance that imposed a tax on occupants of retirement homes. The City contends that: 1) as respondents paid no tax due, they have no standing to challenge the ordinance; 2) the trial court had no jurisdiction before the available administrative remedies were exhausted; 3) the tax was not unconstitutional on grounds of equal protection as an arbitrary and unreasonable classification; and 4) the tax was not preempted by state law. We have concluded that there is no merit to any of these contentions and that the judgment should be affirmed. The case is one of first impression.

The facts in both cases were stipulated. Each of the respondents is a nonprofit corporation organized for charitable purposes that owns and operates a retirement home in the City of Pacific Grove, a charter city. Each retirement home has been granted a property tax exemption pursuant

---

[1] In No. 29424, respondent is John Tennant Memorial Homes, Inc., a nonprofit corporation that owns and operates the Canterbury Woods Retirement Home; in No. 29425, respondent is California-Nevada Methodist Homes, a nonprofit corporation that owns and operates the Forest Hill Manor Retirement Home.

to Revenue and Taxation Code section 214. The occupants of each home are there pursuant to "life care" contracts; in return for certain specified periodic sums, the retirement home agrees to provide housing, meals and medical care for each retiree until the end of his natural life. Pursuant to the terms of the life care contracts involved, bona fide lack of funds with which to pay the monthly service charge is no ground for terminating the contract or ending the obligation of the retirement home to furnish the services contracted for. This obligation to continue to furnish the services whether or not the resident can pay for them is a significant factor in the home's continued exemption from both federal and state income taxes, as well as a qualified charitable institution to receive tax exempt gifts under federal and state gift and inheritance laws.[2]

On June 17, 1970, the City adopted an ordinance imposing a tax of 5 percent of the annual periodic payments made by the occupants of retirement homes. The pertinent portions of chapter 6.11 of the Municipal Code provide: "WHEREAS, a substantial number of residents of the City reside in retirement homes which are exempt from the burden of property taxation by virtue of Section 214 of the Revenue and Taxation Code of the State of California, and Article 13, Section 1c of the California Constitution;

"WHEREAS, the City must nevertheless afford such residents of retirement homes the benefits of municipal services supported in large measure by property taxation, and the Council notes that because such residents are retired and elderly they require certain such services to a greater extent;

"AND WHEREAS, the Council wishes to institute a measure of taxation which will equitably raise funds to properly provide for such services:

"NOW, THEREFORE, THE COUNCIL OF THE CITY OF PACIFIC GROVE DOES ORDAIN as follows: . . . . . . .

"Section 6.11.020 *Purpose.* The City Council declares that the purpose of this chapter is to raise revenues for general municipal purposes by the equitable means of imposing a tax on the occupiers of retirement homes, who the Council finds require greater devotion of municipal services and diligence by reason of the need to give more protection to persons of

---

[2]Qualification of the homes as exempt organizations pursuant to Revenue and Taxation Code section 23701d and Internal Revenue Code section 501(c)(3) is a prerequisite to the welfare exemption pursuant to Revenue and Taxation Code section 214.8 (*City of Los Angeles* v. *County of Los Angeles,* 19 Cal.App.3d 968, 973 [97 Cal.Rptr. 294]).

advanced age, and more protection to the facilities which they occupy with their personal possessions." The ordinance provides penal sanctions for failure to pay and collect the tax (§§ 6.11.070-6.11.080) and specifically exempts by section 6.11.130 "Occupants of retirement homes *which do not enjoy* the welfare exemption under Section 214 of the Revenue and Taxation Code of the State of California . . . ." (Italics supplied.)

The ordinance became operative on July 1, 1970, and the tax is to be collected by the operator of the home, payable on the last day of the month following the close of each calendar quarter. Accordingly, the first payment was due and payable on October 31, 1970. This action was commenced on October 6, 1970. Respondents sought a judicial declaration concerning the validity of the ordinance, as well as temporary and permanent injunctive relief. The order to show cause for the preliminary injunction was heard on October 16, 1970, and by agreement of counsel, continued until October 30, 1970. Thereafter, on October 26, 1970, the matter was submitted to the court for decision on an agreed statement of facts. The temporary restraining order was issued on October 30, 1970, and the final judgment and permanent injunction on November 2, 1970.

■ The City first argues that respondents have no standing in court as they have not yet paid any tax due under the ordinance. However, as the ordinance provides criminal penalties for its violation and the instant action was commenced before the first payment of tax was due, respondents have sufficient standing to maintain the action (*Gowens* v. *City of Bakersfield,* 179 Cal.App.2d 282, 285 [3 Cal.Rptr. 746]).

■ The City next argues that the trial court had no jurisdiction before the available administrative remedies were exhausted. ■ Ordinarily, a taxpayer seeking relief must exhaust available administrative remedies before resorting to the courts. *An exception is made where the tax is a nullity as a matter of law* (cf. *Stenocord Corp.* v. *City etc. of San Francisco,* 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966]).

■ Also, the City's argument ignores the fact that respondents filed their action for declaratory relief here before the tax became due and payable. The administrative remedy provided by the ordinance[3] was not

---

[3] Sections 6.11.080 and 6.11.090 provide that if an operator fails or refuses to collect the tax, the tax administrator may make an assessment that is appealable to the City council. Section 6.11.100 provides for the filing of a verified claim for refund. Obviously, neither of these provisions becomes operative until *after* the tax is due and payable.

available until *after* the date on which the tax was due. Where no administrative procedure is available at the time suit is filed, a court properly assumes jurisdiction over a challenge to the constitutionality of the legislation and declaratory relief is proper (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536, 543-544 [63 Cal.Rptr. 21, 432 P.2d 717]).

■ In addition, it is well settled that where a tax ordinance is penal in nature and can subject the taxpayer to criminal penalties, an injunction against an unconstitutional ordinance is proper to prevent an irreparable injury (*Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405, 407-408 [65 P.2d 884, 109 A.L.R. 895]). ■ We hold, therefore, that the trial court properly found that the doctrine of exhaustion of administrative remedies had no application to the instant case.

We turn next to the question of whether, as the trial court found, the ordinance denies equal protection and due process of law. ■ A statute violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification (*Dept. of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716, 722 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 361]). ■ Further, a discrimination that bears no reasonable relation to a proper legislative objective is invalid. A legislative classification that is purely arbitrary and capricious and based upon no reasonable or substantial difference between classes is clearly unconstitutional (*O'Kane* v. *Catuira,* 212 Cal.App.2d 131, 137 [27 Cal.Rptr. 818, 94 A.L.R.2d 487]).

■ The ordinance imposes a special tax only on retired persons who occupy nonprofit retirement homes. The question here, therefore, is what, if any, substantial differences exist between residents of nonprofit retirement homes and the residents of privately owned and profit motivated retirement facilities, not dedicated to charitable purposes, who are exempt from the tax. The ordinance sets forth as its purpose the fact that the council found that occupiers of retirement homes require a greater devotion of municipal services and diligence by reason of need to give more protection to persons of advanced age and more protection to the facilities they occupy. Assuming the validity of the City council's finding, it is readily apparent that this would be equally true whether the retirement homes were privately owned and profit motivated or nonprofit.

A somewhat similar legal question was presented in *Gowens* v. *City of Bakersfield,* 179 Cal.App.2d 282 [3 Cal.Rptr. 746], wherein a city ordinance required a hotel to collect and report a tax on transient lodgers for

the privilege of occupancy of a single lodging, but exempted from its operation hotels that offered places of lodging for less than five persons. The court held that transient lodgers were denied equal protection of the laws as the tax applied only to lodgers who stayed in larger hotels. The court noted at page 285 that while classification based on the size of a business may, under some special conditions, be reasonable and valid, the classification for purposes of the ordinance, when viewed from the standpoint of the consumer (the lodger), had no reasonable basis whatever. There, as here, the tax was not an occupational or business license tax but a tax on the privilege of occupancy. After the decision in the case, the City of Bakersfield amended the ordinance so as to apply to all occupants of transient lodgings and in such form, the ordinance was subsequently held valid (*Gowens* v. *City of Bakersfield, supra*). Subsequently, the power of the local government entity to levy a tax on transient lodgings was confirmed by the enactment of Government Code section 51030.

*Kelly* v. *City of San Diego,* 63 Cal.App.2d 638 [147 P.2d 127], also involved an occupancy tax. In *Kelly,* the ordinance attempted to levy a tax on the privilege of occupying living quarters in house trailers exempted from general ad valorem taxation. The court, in holding the ordinance unconstitutional under the equal protection clause and in affirming an order enjoining its enforcement, rejected an argument identical to that made here concerning the classification of the privilege of occupancy based on the payment of property taxes. The court said at page 644: "Here we do not have a license tax based on ownership but upon occupancy. What might be the basis of a valid division of owners into classes cannot serve as the foundation for a lawful classification of an entirely different class, namely, occupants." Applying the reasoning of *Gowens* and *Kelly* to the instant case, it is readily apparent that there is no possible or logical difference between an occupant living in a charitable retirement home and one living in a profit motivated retirement home that would justify imposing a tax on the former while exempting the latter. Furthermore, there is no readily ascertainable difference between respondents herein and other beneficiaries of a welfare exemption. Although the express purpose of the ordinance is to raise general revenues from elderly persons who live in retirement homes, the actual purpose of the ordinance is to impose a special tax on its retired persons who may indirectly be receiving a charitable subsidy pursuant to Revenue and Taxation Code section 214.

 When a legislative classification is questioned, if facts can reasonably be conceived that would sustain it, their existence is presumed (*Clark* v. *City of San Pablo,* 270 Cal.App.2d 121, 127 [75 Cal.Rptr. 726]). The

City, relying on this general proposition, contends that there are two reasonable bases that can be conceived for discriminating against occupants of tax exempt retirement homes as opposed to occupants of profit motivated retirement homes.

 First, the City argues that here, the court may presume that there are no profit motivated retirement homes in the City, and accordingly, there is no discrimination. This contention borders on the frivolous and contradicts the stated purpose of the ordinance, namely, to raise revenues required to pay for the extra services provided by the City and of which the City is deprived by the welfare exemption. Furthermore, the validity of an ordinance cannot fluctuate on a day-to-day basis. For example, even accepting the City's assumption of no presently operating profit motivated retirement homes, if one were to be built and opened tomorrow, the ordinance would then be subject to a challenge and become invalid.

 Secondly, the City contends that discrimination solely against occupants of tax exempt retirement homes is justified on the theory that it is proper to use the nonpayment of the municipal property tax as a basis of classification. As noted above, an identical contention was rejected in *Kelly* v. *City of San Diego, supra,* which held unconstitutional a somewhat similar occupancy tax. The City has cited no authorities (and our research has disclosed none) that sustain the imposition of an occupancy tax like that of the ordinance here in issue. *Associated Home Builders etc., Inc.* v. *City of Newark,* 18 Cal.App.3d 107 [95 Cal.Rptr. 648], *Sivertsen* v. *City of Menlo Park,* 17 Cal.2d 197 [109 P.2d 928], and other similar authorities cited by the City, dealt with *license* taxes paid by the owners for the privilege of doing business and involved a reasonable basis for the classification. The instant ordinance taxes not the owners for the privilege of doing business, but the retirees for the privilege of occupancy. As indicated above in the discussion of *Gowens, supra,* an occupancy tax cannot distinguish between groups of occupants without a clear, reasonable and constitutional base.

We turn next to the City's contention that the content and purpose of its ordinance was not preempted by, or in conflict with, state law. Article XIII, section 1c of the California Constitution, set forth below,[4] provides

[4] "In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation all or any portion of property used exclusively for religious, hospital or charitable purposes and owned by community chests, funds, foundations or corporations organized and operated for religious, hospital or charitable purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual. As used in this section,

an exemption for property used for religious, hospital and charitable purposes. This constitutional provision is not self-executing and requires the legislative implementation (*Stockton Civic Theatre* v. *Board of Supervisors,* 66 Cal.2d 13, 16 [56 Cal.Rptr. 658, 423 P.2d 810]) found in Revenue and Taxation Code section 214, subdivision (6), likewise set forth, so far as pertinent, below.[5] ▮ The fundamental basis for all exemptions in favor of charitable institutions is the benefit conferred by them on the public and the consequent relief of the burden on the state to care for and advance the interests of its citizens (*Fifield Manor* v. *County of Los Angeles,* 188 Cal.App.2d 1, 20 [10 Cal.Rptr. 242]). As stated in *Lundberg* v. *County of Alameda,* 46 Cal.2d 644, at page 649 [298 P.2d 1]: "The term charity has been defined in a number of California cases as 'a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons—either by bringing their hearts under the influence of education, or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' "

▮ Retirement homes, like those of respondents, irrevocably dedicated to charitable purposes within Revenue and Taxation Code section 214, become impressed with a charitable trust and are irrevocably dedicated to the trust purposes (*Pacific Home* v. *County of Los Angeles,* 41 Cal.2d 844 [264 P.2d 539]). As noted in *Fredericka Home* v. *County of San Diego,* 35 Cal.2d 789 [221 P.2d 68],[6] arrangements for life care contracts fill a social purpose, as well as the need of the individual.

'property used exclusively for religious, hospital or charitable purposes' shall include a building and its equipment in the course of construction on or after the first Monday of March, 1954, together with the land on which it is located as may be required for the use and occupation of the building, to be used exclusively for religious, hospital or charitable purposes."

[5]"(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes; . . ."

[6]The court said at pages 792 and 793: "The concept of charity is not confined to the relief of the needy and destitute, for 'aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants.' (*Estate of Henderson,* 17 Cal.2d 853, 857 [112 P.2d 605].) So the charge of fees by such an institution as a home for the aged will not necessarily prevent its classification as charitable if such sums 'go to pay the expenses of operation and not to the profit of the founders or shareholders,' for all persons may 'under certain conditions be proper objects of charity.' (*Scripps Memorial Hospital, Inc.* v. *California Emp. Com.,* 24

In *Samarkand of Santa Barbara, Inc.* v. *County of Santa Barbara,* 216 Cal.App.2d 341 [31 Cal.Rptr. 151], the court recognized that the social, economic and governmental problems created by the rapidly growing number of aged persons transcends mere local concern, as follows, at page 349: " 'It is a generally recognized fact that modern miracle drugs and intensive study of geriatrics have lengthened the lives of our people, especially those past 60, to a remarkable extent in recent years. The Congress in an act passed September 2, 1958, entitled "White House Conference on Aging Act" (1 U.S. Code Congressional and Administrative News, p. 2101) declares that: "(1) The number of persons forty-five years of age and older in our population has increased from approximately thirteen and one-half million in 1900 to forty-nine and one-half million in 1957, and the number sixty-five years of age and over from approximately three million in 1900 to almost fifteen million at the present time, and is expected to reach twenty-one million by 1975." Page 2102: "(5) [T]he lack of suitable facilities and opportunities in which middle-aged persons can learn how to prepare for the later years of life, learn new vocational skills, and develop and pursue avocational and recreational interests is driving many of our older persons into retirement shock, premature physical and mental deterioration, and loneliness and isolation and is filling up our mental institutions and general hospitals and causing an unnecessary drain on our health manpower. . . .

" ' "[W]e may expect average length of life and the number of older people to increase still further, we must proceed with all possible speed to correct these conditions and to create a social, economic, and health climate which will permit our middle-aged and older people to continue to lead proud and independent lives which will restore and rehabilitate many of them to useful and dignified positions among their neighbors; which will enhance the vigor and vitality of the communities and of our total economy; and which will prevent further aggravation of their problems with resulting increased social, financial, and medical burdens." ' "

The City's ordinance here in question is, therefore, in direct and irreconcilable conflict with the exemption as interpreted and construed by the courts. ▇▇▇ While a charter city, pursuant to article XI, section 8, of

Cal.2d 669, 675 [151 P.2d 109, 155 A.L.R. 360]; see, also, 51 Am.Jur. § 602, p. 585; annot. 34 A.L.R. 634, 637; 62 A.L.R. 328, 330; 108 A.L.R. 284, 286.) In short, as the word 'charity' is commonly understood in modern usage, it does not refer only to aid to the poor and destitute and exclude all humanitarian activities, though rendered at cost or less, which are maintained to care for the physical and mental well-being of the recipients, and which make it less likely that such recipients will become burdens on society."

the state Constitution, may "make and enforce all laws and regulations in respect to municipal affairs," in respect to all other matters, the cities are subject to the general laws. Thus, if there is a conflict between state law and a municipal ordinance, the local law is invalid unless the subject matter is exclusively of municipal concern (*Professional Firefighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 291 [32 Cal.Rptr. 830, 384 P.2d 158]).

In determining whether the matter is of statewide or local concern, the questions to resolve are: is there a conflict involved and does the Legislature disclose an intent to preempt the field (*Bishop* v. *City of San Jose,* 1 Cal.3d 56, 61-63 [81 Cal.Rptr. 465, 460 P.2d 137]). "As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of the municipal regulation. . . ." (*Bishop, supra,* pp. 61-62.)

The character of a given tax must be ascertained by its incidence and from the nature and legal effect of the language employed (*Ingels* v. *Riley,* 5 Cal.2d 154, 159 [53 P.2d 939, 103 A.L.R. 1]). The preamble of the ordinance here in question stated that the legislative intent is to impose a tax in lieu of the property tax which the retirement homes do not pay because of their tax exempt status. As the ordinance cannot be sustained as a property tax since it is not on an ad valorem basis (*City of Glendale* v. *Trondsen,* 48 Cal.2d 93, 103 [308 P.2d 1]), it must be assumed that the tax is an excise tax, with some of the qualities of both a privilege tax and a sales tax. Although the ordinance expressly provides that the tax is imposed on the "privilege" of occupying the home, the actual tax is levied on the purchase price of an occupant's housing, meals and medical care as would be the case with a sales tax on such items. Clearly, the ordinance cannot be sustained as a sales tax since the field of sales and use taxes has been preempted by state law. (*Rivera* v. *City of Fresno,* 6 Cal.3d 132, 137 [98 Cal.Rptr. 281, 490 P.2d 793].)

Nor can the ordinance be sustained as a "privilege tax." If the state statute affects a municipal affair only incidentally in the accomplishment of a proper objective of statewide concern, then the state law applies even as to autonomous charter cities. (*Dairy Belle Farms* v. *Brock,* 97 Cal.App. 2d 146, 156 [217 P.2d 704].) Here, as indicated above, the paramount state interest in low cost private facilities providing care for the growing number of aged persons in the society and consequently lessening the burden to the public, is obvious. (*Fifield Manor* v. *County of Los Angeles,*

*supra,* 188 Cal.App.2d at p. 20.) *Martin Luther Homes* v. *County of Los Angeles,* 12 Cal.App.3d 205 [90 Cal.Rptr. 524], illustrates that facilities providing essentially housing only are not entitled to the exemption. The court there said, "This is not what is meant in the cases which talk about the charitable purpose of providing the services especially required by the elderly." (P. 213.) The retirement homes here involved provide a broad spectrum of continuing or life care to the aged, including meals, medical and other supportive personal care, as well as housing.

The tax imposed by the ordinance here is expressly designed to and applies only to persons who are beneficiaries of the welfare exemption. The ordinance attempts to recover for the City the amount of tax money that has been lost because of the retirement home tax exempt status. Thus, the purpose of the ordinance exactly and precisely nullifies and frustrates the state welfare exemption of Revenue and Taxation Code section 214 and section 1c of article XIII of the state Constitution.

Furthermore, although the tax is presently imposed at 5 percent of the annual periodic payments, it could well be taxable at a higher rate in subsequent years. The City has not cited any authorities for its unusual position that taxes imposed solely on the recipients of a state created charitable benefit is constitutional. The City contends that the property tax exemption for the retirement home does not produce an excise tax exemption for its occupants. But such a contention need not be answered since the entire ordinance is void as inconsistent with paramount state law. The City's citation of Revenue and Taxation Code section 107 relating to the possessory interest tax paid by an occupant where tax exempt property is used *for non-tax exempt purposes* is likewise misplaced.

Accordingly, we conclude that the trial court properly held that the ordinance was void and unconstitutional on its face.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied July 21, 1972, and appellants' petition for a hearing by the Supreme Court was denied August 16, 1972.