[Crim. No. 405.   Fourth Appellate District.—August 24, 1936.]

In the Matter of the Application of J. L. HOSKINS for a Writ of Habeas Corpus.

Brittan & Mack for Petitioner.

Claflin & Dorsey and Osborn & Burum for Respondent.

MARKS, Acting P. J.—This is an original proceeding for *habeas corpus* to secure release of petitioner from confinement under a warrant issued out of the police court of the city of Bakersfield. The warrant was issued upon a complaint containing five counts, each charging a violation of the license ordinance of that city. Four of these counts allege separate daily violations of the following section of the license ordinance:

"Every person, firm, or corporation who sells in the City of Bakersfield any bankrupt, assigned or damaged goods, wares or merchandise, drugs, jewelry, dry goods, boots, shoes, clothing, hardware, groceries, furniture or stock of merchandise shall pay a license fee of One Hundred ($100.00) Dollars per day, payable in advance daily; provided, that this section shall not apply to any stock of goods owned by any person actually conducting a regular place of business in the City of Bakersfield, which stock has been damaged by fire, or water resulting from such fire, at his said place of business."

Under the admitted facts it appears that Frank V. Harrison conducted a men's furnishing store; that the Hughes Drug Store, a drug store, was operated in the same building; that on May 26, 1936, a fire occurred which damaged the two stocks of merchandise and destroyed the building; that petitioner became the owner of the damaged stocks of merchandise and moved them to another location in Bakersfield where he sold and proposes to continue to sell the damaged goods; that the license collector of the city refused to issue any license to petitioner other than the one costing $100 per day, mentioned in the section of the ordinance which we have quoted; that petitioner refused to pay the license of $100 per day but offered to pay the license imposed on ordinary merchants, in another section of the ordinance, which varied in amount from three to seventy-five dollars per quarter, depending on the volume of business transacted; that the

license collector refused to accept the lesser fee and the arrest of petitioner followed.

As his first ground of attack on the legality of his confinement petitioner urges that the quoted section of the ordinance, in its last clause, expressly excepts from the license tax of $100 per day, the damaged goods which he proposes to sell. If that clause stood alone, and by itself, there might be merit in this argument. The section must be construed as a whole. The license of $100 per day is imposed upon the *person* who sells. The exception relates to certain *goods* damaged. ■ We think the fair interpretation to be put on the exception is that if the owner of a stock of goods is actually conducting a regular place of business in the city of Bakersfield, and such stock is damaged by fire or water during a fire in his place of business, such owner may sell his damaged goods under his general license without paying the special license of $100 per day. If, however, such owner does not elect to sell the damaged goods himself, but sells them to another who attempts to sell them at another store, such second party must pay a license of $100 per day.

The mere statement of our interpretation of the section of the ordinance, if our interpretation is correct, demonstrates the invalidity of the challenged section. It places a greater burden upon one person selling damaged merchandise than upon another selling the same class of goods without any legitimate, reasonable or lawful distinction in the classification of the businesses or the merchandise. The attempted classification is based not upon differences in businesses conducted but upon the antecedent ownership of the goods offered for sale. It would be just as logical to impose one rate of license for goods offered for sale that were produced or at one time were owned by an American Indian, and another for like goods produced or formerly owned by an Aryan.

■ It is well settled in California that a municipality may not discriminate between persons similarly situated and engaged in similar businesses by imposing different license taxes upon them. It may only classify various businesses carried on within its boundaries when each group of classified businesses naturally fall into one class and such classification must be based upon reasonable or natural

distinctions. (See *Hoffman Candy Co.* v. *Newport Beach,* 120 Cal. App. 525 [8 Pac. (2d) 235], and cases cited.) Antecedent ownership of property does not furnish any such ground of classification. It follows that the quoted section of the ordinance is void as it is discriminatory and therefore unconstitutional and the four counts of the complaint brought under it do not state a public offense.

The first count of the complaint alleges that petitioner conducted his business of selling assigned and damaged goods, wares and merchandise, etc., without first procuring a license therefor. While there is no precise allegation in this count that he actually sold such goods, and the ordinance only requires the payment of $100 per day by a person who *sells* such goods, we think this count was intended to fall under the same provisions of the ordinance as the other four. This conclusion is not questioned by counsel. It follows that what we have said concerning the sufficiency of the other counts is equally applicable to the first count and that it does not charge petitioner with the commission of a public offense.

Respondent relies upon the case of *Minces* v. *Schoenig,* 72 Minn. 528 [75 N. W. 711], as supporting the questioned section of the license ordinance. In that case it was held that a municipality might impose a license tax on any person "advertising or conducting a gift, fire or bankrupt sale" and that a license fee of $25 per month on anyone doing so was not unreasonable. The question of the ordinance being discriminatory was not involved in that case in so far as the opinion discloses.

In the Minces case the court comments upon the fact that while fire sales are sometimes honestly conducted, "they are usually conducted by transients and strangers, who stay only a short time in one place, sometimes honest men, but often sharpers who may deal honestly, but who often and even generally sell shoddy and inferior goods, and who attract trade by falsely representing that their goods are being sold at a great sacrifice, because they have been somewhat injured by fire . . . " Common experience has demonstrated that these charges are too often true and that dishonest merchandisers frequently defraud the credulous public by buying a small stock of goods damaged by fire and importing a large quantity of inferior merchandise

which is sold under fraudulent representations that the articles are quality goods sold at greatly reduced prices because of fire damage. No such dishonest plan or purpose on the part of petitioner is involved in this case. It was neither alleged nor proved. So far as we know he proposes to conduct an honest "fire sale" and only dispose of the stocks of goods actually damaged by the fire and purchased by him from the two Bakersfield merchants. We cannot assume or presume a secret intent on the part of petitioner to defraud the public by the importation of a quantity of inferior goods to be mingled with the damaged stocks and sold under the false representation that they were parts of such stocks and were in the fire. Even though petitioner entertained such an intent it might not be important in this case.

Petitioner is discharged and his bail is exonerated.

Jennings, J., concurred.

Barnard, P. J., being absent, did not participate herein.