[Civ. No. 3309. Fourth Dist. Mar. 30, 1944.]

FRANK M. KELLY et al., Respondents, v. THE CITY OF SAN DIEGO et al., Appellants.

Jean F. DuPaul, City Attorney, and Bertrand L. Comparet, Deputy City Attorney, for Appellants.

John T. Holt for Respondents.

MARKS, J.—This is an appeal from a judgment holding a daily tax, levied by the city of San Diego on house trailers,

to be paid by the occupants, unconstitutional and void and enjoining its collection.

The trial court held the tax void because of discrimination between members of the same class, part of which were required to pay the tax while others of that class were exempt from it. Other questions are argued by counsel but we find it unnecessary to consider them because the one question of discrimination is decisive of the case.

Plaintiffs were workers in war industries in San Diego, or were wives of men in the armed services. They lived in trailers which were located in trailer camps duly licensed by the city of San Diego.

Ordinances of the city of San Diego prohibited persons from living in trailers not located in licensed trailer camps, except for an initial period of fifteen days where no trailer camp space was available.

Other ordinances of San Diego provided a rather elaborate procedure for the establishment, maintenance and operation of trailer camps in that city. Health and sanitation facilities were required and frequent inspections were to be made. These measures clearly come within the police powers of the city and no question is raised as to their validity.

A space 20 feet wide and 30 feet long was required for each trailer and the operator of the camp was required to pay a license of $2 per year for each unit of space in his camp, with a minimum annual license of $15. It was made unlawful for any person to remain or live in any automobile trailer camp for more than six months in any twelve month period, subject to the exception that if a shortage of adequate housing existed the Director of Public Health might grant special permits to those "engaged in vital defense work" allowing them to remain for additional three month periods.

Section 2 of ordinance 2556 (New Series) which gives rise to this litigation, provides as follows:

"There is hereby imposed a service charge or tax of ten cents (10¢) per day per unit, on the occupant or occupants of each trailer occupying a unit of space in any trailer camp within the City of San Diego. Said charge shall be payable by such occupant or occupants to the operator of the trailer camp in which such trailer is located, at the same time and for the same period that the rental or charge for the unit of trailer space in such trailer camp is paid."

The operator of the trailer camp was required to pay the

service charges collected by him to the city treasurer. Refusal of an occupant of a trailer to pay the service charge was made a misdemeanor subjecting the one in default to fine and imprisonment.

Plaintiffs all lived in trailers in licensed trailer camps. Some of the trailers were owned by the occupants and some by the operators of the camps. Some had paid the license tax because of fear of arrest and prosecution, while others, who had refused to pay the tax, had been arrested and were awaiting trial at the time this action was filed. It is admitted there were about 1,400 trailers in licensed trailer camps in San Diego with about 5,000 occupants.

Plaintiffs seek to support the judgment on the ground that the classification made by the ordinance is discriminatory and unreasonable in that it places the burden of the license on occupants of trailers in licensed trailer camps while it imposes no such charge on transients living in hotels or lodging houses or persons without property taxable by the city of San Diego who occupy furnished apartments and furnished houses. It is urged that the tax is levied on the right to occupy living quarters and that no logical distinction can be made in the class occupying them simply because some are fortunate enough to dwell within permanent structures, while others have to live in temporary quarters in a trailer camp; that to exempt the former and tax the latter is to exempt the fortunate and tax the unfortunate, which has never been permitted under federal and state Constitutions.

Defendants seek to justify the tax on the ground that the classification is reasonable, natural and logical because the trailer dwellers do not pay, directly or indirectly, any property tax for the support of the general municipal activities of the city, while dwellers in houses, apartments, hotels and lodging houses contribute to the financial support of the city by paying rent to their landlords who in turn use a portion of the rent to pay the city taxes on the land, buildings and furnishings.

This argument overlooks the fact that each trailer occupies 600 square feet of land in the trailer camp and that this land is assessed by the city and is subject to the payment of city taxes. Further, before a trailer camp can be licensed certain improvements must be erected to provide sanitation and to promote the health of the trailer dwellers. These improvements are subject to assessment and taxation for general

municipal purposes. Also, the city levies a direct license tax on operators of trailer camps which must be paid into the city treasury and may be used for general municipal purposes. If the payment of rent by those who live in permanent structures can be regarded as a contribution to the general city revenues through the payment of taxes by the owners of the structures, the same process of reasoning leads to the conclusion that trailer dwellers also contribute to the general municipal revenues through the payment of rent to the camp operator, who must pay the license on the camp, and, through the payment of municipal taxes on the land and improvements in the trailer camp by the owner. Thus this argument fails on analysis and shows no logical distinction, as far as contributing to city revenues goes, except perhaps in the amount contributed, between tenants occupying permanent structures and those occupying trailers. Both indirectly contribute to the general revenues of the city of San Diego through the payment of rent.

■ It is also argued by defendants that a logical and lawful distinction which furnishes the basis of just classification is to be found in the method of taxation of the trailers and of permanent structures. Trailers are not the subject of general taxation. (Stats. 1935, p. 1312, as amended; § 10751, Revenue and Taxation Code.) Owners are charged a fee, which is not a tax as usually understood, but is a charge imposed upon them for the privilege of using the highways of the state. (*Ingels* v. *Riley,* 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1].) It is levied at the rate of 1¾ per cent of the actual market value of the vehicle. (Sec. 10752, Revenue and Taxation Code.) Forty per cent of this revenue is paid to the cities and counties of the state in proportion to their populations, the money to be expended "for law enforcement, for the regulation and control and fire protection of highway traffic, and for any other State purpose." (Sec. 11005, Revenue and Taxation Code.) Thus automobile trailers are exempt from general taxation while permanent structures are not.

Defendants rely on the case of *Continental Baking Co.* v. *City of Escondido,* 21 Cal.App.2d 388 [69 P.2d 181], as supporting their argument that the difference in the method of taxation of trailers and permanent structures furnishes a valid ground for classification under which the provisions of the ordinance must be sustained. An ordinance of the city of Escondido imposed a license fee of $50 a year upon any

bakery which was upon the tax rolls of the city, and a license of $150 a year on a bakery outside of Escondido which sold and delivered bakery products within the city.

The classification was held to be valid and the ordinance was upheld, the court saying:

"That the ordinance here in question may not be said to be a mere subterfuge for such oppression we think is clear. Persons conducting bakeries within the City of Escondido are obliged to pay an *ad valorem* tax to the city on the real and personal property devoted to their businesses. Those engaged in the bakery business elsewhere pay no such tax to the City of Escondido. This fact alone furnishes sufficient justification for imposing a greater license fee upon the latter class."

In reaching this conclusion the District Court of Appeal discussed with approval and quoted from *Bueneman* v. *City of Santa Barbara*, 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895], as follows:

"The Supreme Court held unconstitutional an ordinance which placed a license tax upon persons doing a laundry business within the city who had no place of business within the city and entirely exempted from license tax persons doing a laundry business at a fixed place of business within the city. The court in that case recognized the rule laid down in *Ex parte Haskell, supra* [112 Cal. 412 (44 P. 725, 32 L.R.A. 527)], but distinguished that case in the following language:

" 'But the right to make such distinctions is not broad enough to allow a municipality to tax persons doing a particular kind of business within the city and to entirely exempt other persons doing the same kind of business in essentially the same way.' "

Under the rule announced in the Bueneman case, and approved in the Continental Baking Company case, the difference in the methods of taxation of trailers and permanent structures cannot aid defendants. Taxes on real estate, and the privilege charge placed on automobile trailers, are based on ownership and primarily are paid by the owners. The license tax involved here has nothing to do with ownership of property. It is a charge imposed on the right of certain people to occupy a certain kind of dwelling that affords some protection from the elements. It is a tax on occupancy. The house, apartment, hotel or lodging furnishes protection from the elements as does the trailer. We can see

no valid distinction, for the purpose of classification, between the occupancy of a trailer and the occupancy of a permanent structure except perhaps the greater comfort and convenience of the latter and the higher rent paid. The occupant of the trailer is taxed under the provisions of the ordinance, while the occupant of the permanent structure is entirely exempt from the license. Thus under the rule announced in *Bueneman* v. *Santa Barbara, supra,* and approved in *Continental Baking Co.* v. *City of Escondido, supra,* the city of San Diego may not levy a license tax on occupants of automobile trailers while entirely exempting others of the same class (occupants of permanent structures) from the same or any other similar charge.

Further, the classification approved in the Continental Baking Company case is based on whether or not there is property on the assessment rolls of the city. No such classification is attempted in the ordinance in question. The property tax, and the automobile trailer charge are based on ownership, and, if the reasoning in the Continental Baking Company case be followed, there might possibly be a lawful classification of owners of trailers as contrasted to the owners of permanent rental structures. Here we do not have a license tax based on ownership but upon occupancy. What might be the basis of a valid division of owners into classes cannot serve as the foundation for a lawful classification of an entirely different class, namely occupants.

Because we have quoted from and discussed the case of *Continental Baking Co.* v. *City of Escondido, supra,* it must not be construed as indicating that we approve all of the reasoning of that case.

There are many decisions of our California courts dealing with municipal ordinances imposing license taxes on various trades, avocations, business and professions. While some are not easily harmonized with others there is one principle recognized by all of them. It is this: The municipality may classify business where there is an intrinsic, natural and reasonable ground for such distinction, and may impose a different license burden on the different classes. It cannot classify, except on such basis, and cannot tax some falling within a class while exempting others of the same class. (See *Ex parte Haskell,* 112 Cal. 412 [44 P.725, 32 L.R.A. 527]; *In re Richardson,* 170 Cal. 68 [148 P. 213]; *Town of St. Helena* v. *Butterworth,* 198 Cal. 230 [244 P. 357]; *Bueneman* v. *Santa Barbara, supra; E. A. Hoffman Candy Co.* v. *City*

*of Newport Beach,* 120 Cal.App. 525 [8 P.2d 235]; *In re Hoskins,* 16 Cal.App.2d 251 [60 P.2d 535]; *In re Fassett,* 21 Cal.App.2d 557 [69 P.2d 865]; *Soares* v. *City of Santa Maria,* 38 Cal.App.2d 215 [100 P.2d 1108]; *Van Gammeren* v. *City of Fresno,* 51 Cal.App.2d 235 [124 P.2d 621].)

When measured by the foregoing rules we cannot regard the classification made by the ordinance as reasonable. It is a tax on occupancy and, because the living quarters of one group of persons are more commodious and comfortable than those of another group, furnishes no ground for distinction and for exempting the more fortunate from the charge while imposing it on their less fortunate neighbors. Because it does this the ordinance is discriminatory and void.

Defendants urge prejudicial error in the denial of their motion to strike portions of the amended complaint.

Two groups of allegations to which the motion is directed are to the effect that the plaintiffs are workers engaged in necessary war industries, are regularly purchasing war bonds and are registered voters of the city of San Diego. The argument is made that these allegations amount to mere "flag waving" and have no proper place in the pleading. We may concede this to be true. While those allegations may have been surplusage they did no harm to the cause of defendants and supplied no reason for the ultimate decision of the case.

It is next urged that allegations to the effect that there were many trailer dwellers in San Diego who did not own the trailers in which they lived, but rented them from the operators of trailer camps, should have been stricken from the pleadings. We may again concede, without holding, that those allegations should have been stricken without finding prejudice in the ruling. It was alleged that some of the plaintiffs owned the trailers in which they lived while others rented them from the camp operators. Thus the same issue was squarely presented by proper allegations in the pleadings so it was properly before the court.

Next, the motion was directed to allegations to the effect that great numbers of persons have moved to San Diego to work in war industries, overcrowding ordinary living quarters and compelling many people to live in trailers. This is a condition known to every person in and around San Diego of which we may take judicial notice and of which we have personal knowledge as the law requires us to move to

that city on May 1st of each year. ▇ While a matter of which a court may take judicial notice need not be alleged, (*Los Angeles Paving Co.* v. *Los Angeles Foundry Co.*, 181 Cal. 685 [186 P. 593]) no prejudice resulted in the failure to strike this portion of the pleading.

The last specification of the motion was directed to the hereinafter quoted phrase in a paragraph alleging that defendants threatened to arrest and prosecute plaintiffs for failure to pay the license tax "and thereby to hinder the production of war materials and machines." The quoted phrase is obviously a conclusion of the pleader but again we can find no prejudice in the refusal to strike it from the pleading as it had no effect on the ultimate decision of the case.

We are prohibited from reversing a judgment "for any error as to any matter of pleading, or for any error as to any matter of procedure," that is not prejudicial to the party complaining. (Const., art. VI, § 4½.) Thus any errors arising from the ruling on the motion to strike cannot furnish grounds for a reversal of the judgment as no prejudice resulted.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 25, 1944. Gibson, C. J., and Traynor, J., voted for a hearing.