[Civ. No. 65353. Second Dist., Div. Four. Oct. 28, 1982.]

BUNKER HILL ASSOCIATES, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Riordan, Caps, Carbone & McKinzie, James A. Hamilton and Lee D. Williams for Plaintiff and Appellant.

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, Pedro B. Echeverria, Assistant City Attorney, and Sherri M. Kirk, Deputy City Attorney, for Defendants and Respondents.

## OPINION

AMERIAN, J.—This is an appeal from a judgment after granting of motion of respondent City of Los Angeles (City) for summary judgment under Code of Civil Procedure section 437c. Appellant, Bunker Hill Associates (Bunker Hill), filed a class action suit challenging a tax on tenants under article 1.3 of the Los Angeles Municipal Code.[1]

---

[1]The tax is imposed by Los Angeles Municipal Code section 21.3.3, which provides:

"(Amended by Ord. No. 141.620. operative 1/1/71.) For the privilege of occupancy as hereafter described, an excise tax is hereby imposed upon every tenant renting a building or structure of any kind on land located in the City of Los Angeles from a lessor for purposes other than dwelling, sleeping or lodging, or renting space or the use or possession or space, or the right to use or posses space in such a building or structure for such purposes, at the rate of $1.25 per calendar quarter or fractional part thereof for the first $1,000.00 or less of charges attributable to said calendar quarter, plus $1.25 per calendar quarter for each additional $1,000.00 of charges or fractional part thereof in excess of $1,000.00. For the purposes of this Article, the privilege of occupancy shall, unless an exemption or partial exemption is provided herein, include renting by a tenant of every kind and character, without regard to the length of the term of the tenancy or the date of its commencement, expiration or renewal. A tenant otherwise subject to the tax imposed herein shall not be exempt therefrom by reason of the fact that one or more persons my reside within the building or structure where either the primary purpose of the particular tenancy or the primary use or right of use by the particular tenant is for some purpose other than dwelling, sleeping, or lodging. Nor shall a tenant otherwise subject to the tax imposed herein be exempt therefrom by reason of the fact that he proposes to operate or does in fact operate the building or structure as a premises for a business subject to tax under Sec. 21.99 of this Chapter.

"Section 2. This ordinance is enacted solely for the purpose of clarification of existing provi-

City noticed a motion for summary judgment, whereupon Bunker Hill filed a motion for summary adjudication of issues. The trial court granted the motion of City and denied the motion of Bunker Hill. This appeal is from the judgment in favor of City, after the summary judgment motion was granted.

We hold that summary judgment was proper and affirm.

### FACTS

Bunker Hill is a tenant in an office building owned by Connecticut General Life Insurance Company. The tax levied by City is an excise tax on commercial tenants for the privilege of occupancy. Upon the landlord is imposed the responsibility of collecting the tax and remitting it to the city clerk. (L.A.Mun.Code, § 21.3.5.).

Los Angeles Municipal Code section 21.3.4 lists those tenants exempt from the tenant's tax. Among the classes of exemption is, "(f) Tenants of a person subject to taxation for engaging within the City of Los Angeles in a business described in Sec. 21.98 of this Chapter."

The Los Angeles Municipal Code provides in section 21.98 for a tax on lessors who engage in the business of renting commercial premises. Thus, if each such landlord were a "person subject to taxation" under section 21.98, no commercial tenant in the city would be taxed under the tenant's tax.

There is, however, a class of landlord not subject to the section 21.98 tax on commercial lessors. That class (banks and insurance companies) is granted exemption from local property tax by the California State Constitution in article XIII, sections 27 and 28.[2]

### CONTENTIONS

To defeat the tenant's tax, Bunker Hill urges (1) the tax discriminates arbitrarily between taxpayers of the same class, (2) the tax violates the in lieu provision of article XIII, section 27 and section 28 of the California Constitution, and (3) the tax violates article I, section 3(5) of the Los Angeles City Charter.

---

sions of Article 1.3 of Chapter 2 of the Los Angeles Municipal Code and is not intended to constitute a change in the administrative interpretation or existing administrative practices followed with respect thereto. The City Clerk is therfore directed to enforce the terms of this ordinance, regardless of the date on which it becomes effective, as though they were in effect and operative throughout the first calendar quarter of 1971."

[2]Each of those sections provides that the tax imposed by the state is "in lieu of all other taxes." (Cal. Const., art. XIII, §§ 27, 28, subd. (f).)

A. *The Tax Does Not Discriminate Arbitrarily*

According to City, the tenant's tax is an excise tax on the privilege of occupying real property in the City of Los Angeles for commercial purposes. It purports to be imposed upon every tenant and exempts certain tenancies from its provisions. The exempt classes include those involving warehousing or storage, parking or storage of automobiles, and placing of coin-operated machines on the leased premises. No one quarrels with the propriety of the exemption of these classes of tenancies.

Tenancies in which the landlord is subject to the section 21.98 tax are also exempted under the ordinance. Bunker Hill contends that *this* exemption results in a violation of equal protection and is an arbitrary distinction. Stated simply, Bunker Hill argues it is discriminated against when it is subject to the tenant's tax because its landlord is an insurance company, exempt under the California Constitution from the section 21.98 tax, whereas other commercial tenants are exempt from the tenant's tax if their landlord is subject to the section 21.98 tax.

In *Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63 Cal.2d 222 [45 Cal.Rptr. 869, 404 P.2d 477], an equal protection challenge was raised to a state tax on out-of-state insurers. The tax in question was a retaliatory tax and in practice impacted small Illinois insurance companies but not larger Illinois insurers.

The Supreme Court rejected the challenge, stating, "[t]he United States Supreme Court, however, has long recognized the elementary principle that a distinction in tax statutes between parties does not violate the equal protection clause if such distinction rests upon a rational basis. That court has said, 'Neither due process nor equal protection imposes upon a state any rigid rule of the equality of taxation. . . . A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.' (*Carmichael* v. *Southern Coal Co.* (1937) 301 U.S. 495, 509. . . ." (63 Cal.2d at pp. 232-233.)

It was noted in *Franklin Life Ins. Co.* v. *State Board of Equaliziation, supra,* 63 Cal.2d 222, that the statute in question did not by its terms discriminate as to size of insurer and no discrimination followed as a matter of necessity from the terms of the statute.

*United States* v. *City of Detroit* (1958) 355 U.S. 466 [2 L.Ed.2d 424, 78 S.Ct. 474], put under review a tax imposed by the State of Michigan. The statute provided that when tax exempt real property is used by a private party in

a business conducted for profit, the private party is subject to taxation to the same extent as though he owned the property. The tax was computed at the rate used for calculating real property taxes. A private corporation was a user, under lease, of property owned by the federal government and was taxed in accordance with the statute. The lease provided that to the extent the user (tenant) was taxed under the Michigan statute, he was entitled to a deduction on his rent payments under the lease.

Both the corporation and the federal government challenged the statute. One basis of attack was that the tax discriminated against the federal government or those with whom it deals. The court observed that the tax applied only to exempt property and to all of those who use it in a business conducted for profit, that the taxes due are the personal obligation of the lessee-user, that the owner is not liable for payment and that the property is not subject to any lien if the taxes remain unpaid.

The court rejected the claim that the tax was discriminatory and stated, ". . . But here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Federal Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities. The class defined is not an arbitrary or invidiously discriminatory one. As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners or passed on by them to their business lessees. In the absence of such equalization the lessees of tax exempt property might well be given a distinct economic preference over their neighboring competitors, as well as escaping their fair share of local tax responsibility. . . ." (*United States* v. *City of Detroit, supra*, 355 U.S. at pp. 473-474 [2 L.Ed.2d at p. 429].)

The tax under attack in *United States* v. *County of Fresno* (1977) 429 U.S. 452 [50 L.Ed.2d 683, 97 S.Ct. 699], was a county use tax imposed on possessory interests in improvements on tax exempt land. The possessory interests in question were those of federal employees who resided in housing owned and supplied to them by the federal government as part of their compensation. The federal government and the employees challenged the tax on several grounds, including the ground that the tax discriminated against employees of the federal government.

The court observed, "Although the tax is imposed by the appellee counties on renters of real property only if the owner is exempt from taxation—and con-

sequently is not imposed on the vast majority of renters of real property in California—the tax is not for that reason discriminatory. In this respect this case is governed by *United States* v. *City of Detroit,* 355 U.S. 466 (1958). There the city of Detroit imposed a use tax on those who used tax-exempt property owned by the United States. The tax was measured by the value of the property. With respect to nonexempt property, a similar tax was imposed on the owner and none on the user. In answering an argument that the tax discriminated against those dealing with the Federal Government, the Court said: [¶] 'As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners *or passed on by them to their business lessees.' Id.,* at 473-474. (Emphasis added.) [¶] Similarly, here the State of California imposes a property tax on owners of nonexempt property which is 'passed on by them to their . . . lessees.' Consequently, the appellants who rent from the Forest Service are no worse off under California tax laws than those who work for private employers and rent houses in the private sector."[3] (*United States* v. *County of Fresno, supra,* 429 U.S. at pp. 464-465 [50 L.Ed.2d at pp. 693-694].)

■ Applying these principles to the case before us, we note that there is a rational basis for levying the tenant's tax only on tenants whose landlords are exempt from property tax under the California Constitution. Were the tenant's tax imposed on all, then tenants whose landlords were not constitutionally exempt from property tax would bear (1) directly the burden of the tenant's tax in question and (2) indirectly through their rental rate the burden of the property tax paid by the landlord. With the tenant's tax imposed only on tenants whose landlords are constitutionally exempt from local property tax, a tenant of such landlord bears directly the tenant's tax but does not bear indirectly any commercial lessor's tax upon the landlord. Conversely, the tenant whose landlord incurs commercial lessor's tax bears that burden indirectly through his rent and is not subject to the tenant's tax.[4]

There is, then, the rational basis for legislative classification required by *Franklin Life Ins. Co.* v. *State Board of Equalization, supra,* 63 Cal.2d 222, as well as the equalizing features approved in *United States* v. *City of Detroit,*

---

[3]In one of the footnotes to the opinion, the Supreme Court observed, "With respect to non-tax-exempt land, California imposes a property tax on the owner. No tax is imposed directly on a renter of non-tax-exempt land. However, the tax on the owner is presumably reflected in the rent and the renter may thus pay the tax indirectly." (429 U.S. 452, fn. 3, at pp. 455-456 [50 L.Ed.2d at p. 688].)

[4]The rate of tax is the same under the tenant's tax (L.A.Mun.Code, § 21.3.3) as under the lessor's tax (L.A.Mun.Code, § 21.98).

*supra,* 355 U.S. 466, and *United States* v. *County of Fresno, supra,* 429 U.S. 452. We conclude that the section 21.3.3 tax does not discriminate arbitrarily.

The cases relied upon by Bunker Hill are distinguishable. *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372 [103 Cal.Rptr. 215], involved a city tax levied on occupants of nonprofit retirement homes. Such homes were exempt from local property tax under the Revenue and Taxation Code welfare exemption (Rev. & Tax. Code, § 214) and under what is now article XIII, section 4 (then art. XIII, § 1c) of the state Constitution. The city did not levy the tax on occupants of retirement homes which were not entitled to the welfare exemption.

The preamble of the ordinance reflected an intent to impose a tax in lieu of the property tax, because of the tax exempt status of nonprofit retirement homes. In holding the tax to be unconstitutional on its face, the court observed, "[t]he tax imposed by the ordinance here is expressly designed to and applies only to persons who are beneficiaries of the welfare exemption. The ordinance attempts to recover for the City the amount of tax money that has been lost because of the retirement home tax exempt status. Thus, the purpose of the ordinance exactly and precisely nullifies and frustrates the state welfare exemption of Revenue and Taxation Code section 214 and section 1c of article XIII of the state Constitution." (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove, supra,* 27 Cal.App.3d at p. 385.) The court also noted that the tax conflicted with the welfare exemption.

The court held that there was no rational basis for distinguishing between occupants of nonprofit homes and those in privately owned and profit motivated homes, since occupants required municipal services without regard to whether the home was or was not operated for profit.

Bunker Hill relies on *Kelly* v. *City of San Diego* (1944) 63 Cal.App.2d 638 [147 P.2d 127]. In that case a daily occupancy tax was imposed on those who lived in trailers in licensed trailer camps but was not imposed on those who lived in hotels or lodging houses. The court held the tax unconstitutional on the basis that the classification was not a reasonable one, and stated, "[I]f the payment of rent by those who live in permanent structures can be regarded as a contribution to the general city revenues through the payment of taxes by the owners of the structures, the same process of reasoning leads to the conclusion that trailer dwellers also contribute to the general municipal revenues through the payment of rent to the camp operator, who must pay the license on the camp, and, through the payment of municipal taxes on the land and improvements in the trailer camp by the owner. Thus this argument fails on

analysis and shows no logical distinction, as far as contributing to city revenues goes, except perhaps in the amount contributed, between tenants occupying permanent structures and those occupying trailers. Both indirectly contribute to the general revenues of the city of San Diego through the payment of rent." (63 Cal.App.2d at p. 642.)

Thus, rather than aiding Bunker Hill, *Kelly* supports the position of City insofar as it recognizes that there is an indirect contribution to city revenues from a tenant through its rent payment.

### B. *The Tax Does Not Violate the In Lieu Provisions of Article XIII*

The legislative history of the section 21.98 tax on lessors demonstrates that the city council had clearly in mind the constitutional prohibition against a local tax on banks and insurance companies when the section 21.98 tax was being considered. The tenant's tax was adopted with provisions excluding from its scope tenants whose lessors were subject to the section 21.98 tax, as noted above. Significantly, the only responsibility of banks and insurance companies as lessors under the section 21.3.3 tax is the task of collecting the tax and transmitting it to the City. That method of tax collection is not unique.

The utility user's tax, collected by utilities but imposed on customers of the utilities, was considered and approved in *City of Modesto* v. *Modesto Irrigation Dist.* (1973) 34 Cal.App.3d 504 [110 Cal.Rptr. 111]. In *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 139 [98 Cal.Rptr. 281, 490 P.2d 793], the Supreme Court rejected the contention that requiring a utility company to collect and remit such a tax was a constitutionally forbidden regulation of utilities by a municipality. The state sales tax was considered in *U. S.* v. *Cal. State Bd. of Equalization* (9th Cir. 1981) 650 F.2d 1127, in which it was stated, "[t]he legal incidence of a tax falls on the party who the legislature intends will pay the tax. [Citations.] A determination of legal incidence is not, however, an inquiry into who is legally obligated to remit the collected tax to the state. That is, the legal incidence of a tax does not necessarily fall on the party who acts as conduit by forwarding collected taxes to the state. [Citation.] . . ." (650 F.2d at pp. 1130-1131.)

In response to the argument of Bunker Hill that the tenant's tax is a direct tax on banks and insurance companies, one must look to the provisions of article 1.3. In section 21.3.5(a), the lessor is given the duty to collect the tax from the

tenant.[5] In section 21.3.7, the lessor is subject to an action by the City for any portion of the tax collected but not remitted.[6]

Bunker Hill objects because if a tenant pays only his rent and none of the tax, then under the statute "a proportionate share of both the charge and the tax shall be deemed to have been paid." But this does not provide for a tax upon the landlord. For any rent unpaid the lessor retains all rights and remedies against the tenant. So, if the rent under the lease is $10,000 and the tenant pays only $10,000 and does not pay the tax, any amount lessor sends to the City in payment of the tax is an amount of rent which is unpaid from the tenant. There is no tax imposed on lessor, either direct or indirect, from the article 1.3 scheme.

## ■ C. *The Tenant's Tax Does Not Violate the City Charter*

The Los Angeles City Charter provides in article I, section 3(5) as follows: "No discrimination in the amount of license tax shall be made between persons engaged in the same business otherwise than by proportioning the tax in the amount of business done." The position of Bunker Hill is that the tenant's tax violates this charter provision (1) by taxing only some commercial tenants and not others in the same business, depending on whether or not the lessor is an exempt bank or insurance company, and (2) by gauging the amount of the tax to the rent paid rather than on the "amount of business done."

City argues that the tenant's tax is an occupancy tax, not a business license tax and so the charter provision of article I, section 3(5) has no application at all. We agree with City. In the first sentence, the legislation states, "For the privilege of occupancy as hereafter described, an excise tax is hereby imposed upon every tenant renting a building or structure of any kind on land located in the City of Los Angeles. . . ." (L.A.Mun.Code, § 21.3.3) This statement clearly expresses the legislative intent that the tax is an occupancy tax, is not a business license tax and accordingly, the City charter provision in question does not apply. The tenant's tax is not a license tax within the meaning of the charter provision.

[5] Section 21.3.5(a) of the Los Angeles Municipal Code provides: "(a) The tax imposed by this Article shall be collected from the tenant by the lessor. The amount of tax collected in one calendar quarter shall be remitted to the City Clerk on or before the last day of the month following the close of each calendar quarter. The tax shall be collected insofar as practicable at the same time as and along with the charges made in accordance with the lessor's regular billing practice. If the amount paid by a tenant is less than the full amount of the charge and the tax which has accrued for the billing period, a proportionate share of both the charge and the tax shall be deemed to have been paid."

[6] Section 21.3.7 of the Los Angeles Municipal Code provides: "Any tax required to be paid by a tenant under the provisions of this Article shall be deemed a debt owned by the tenant to the City. Any such tax collected from a tenant which has not been remitted to the City Clerk shall be deemed a debt owed to the City by the person required to collect and remit. Any person owing money to the City under the provisions of this Article shall be liable to an action brought in the name of the City for the recovery of such amount."

## DISPOSITION

The judgment of the trial court is affirmed.

Kingsley, Acting P. J., and Tynan, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.