[No. B041918. Second Dist., Div. Three. Aug. 30, 1990.]

JENNY R. BRITT et al., Plaintiffs and Appellants, v.
CITY OF POMONA et al., Defendants and Respondents.

**COUNSEL**

Brancart & Brancart and Christopher Brancart for Plaintiffs and Appellants.

Glasman, Colvin & Adams, Arnold M. Glasman and Irving Leftoff for Defendants and Respondents.

**OPINION**

**CROSKEY, J.**—Plaintiffs appeal from an order of dismissal which was entered after the trial court sustained demurrers, without leave to amend, to all 10 causes of action in their first amended complaint. By their action, plaintiffs seek to invalidate as unconstitutional a municipal tax imposed upon persons living in hotels and like lodgings. Plaintiffs filed this action

after the defendant municipality amended a taxing scheme that had previously taxed the use of such transient living quarters for periods of 30 days or less. The amended ordinance at issue here is designed to tax the use of "transient-type" accommodations, no matter how long the taxpayer lived (or intends to live) in them.

Having examined the challenged ordinance, we conclude that because it taxes persons who reside only in certain designated types of shelter but not persons who reside in others such as apartments, houses and boarding homes, and because it permits some transient residents to escape any tax at all, it violates state and federal equal protection requirements and is therefore unconstitutional. We further find that the ordinance violates due process requirements because its terms are too vague to be understood and applied by persons of common intelligence.

Because the ordinance suffers from these constitutional infirmities, the order which dismissed plaintiffs' action must be reversed.

### PROCEDURAL AND FACTUAL BACKGROUND

On January 5, 1988, plaintiffs Jenny Britt, Larry Mayfield and Linda Miller filed a verified complaint against the City of Pomona and certain city officials (hereinafter collectively referred to as the City) for declaratory relief and for a tax refund. Plaintiffs also petitioned for an alternative writ of mandate directing the City to cease imposing and collecting a "transient occupancy tax" or show cause why they should not be ordered to do so.

1. *The "Transient Occupancy Tax"*

The focus of this action, as originally pled, was a tax enacted by the City in 1965 and amended in 1987. The tax is provided for in article VII of the City's municipal code and in 1987 was entitled "Transient Occupancy Tax." (Hereinafter, this tax will be referred to as the 1987 transient occupancy tax.)

Section 9-126 of the 1987 transient occupancy tax provided in pertinent part that "For the privilege of occupancy in any hotel, each transient is subject to and shall pay a tax in the amount of eight percent of the rent charged by the operator. Said tax constitutes a debt owed by the transient to the city which is extinguished only by payment to the operator or to the

city. The transient shall pay the tax to the operator of the hotel at the time the rent is paid."[1]

As will be noted from the definition of "transient" (see fn. 1), the 1987 version of the transient occupancy tax provided no time-period element with respect to who would be considered a transient and therefore liable for payment of the tax. However, immediately prior to the 1987 amendment, the ordinance defined "transient" as one who occupied a lodging for 30 days or less. In addition, the ordinance as originally enacted in 1965 provided for a 60-day time period. It was after the elimination of any time element that plaintiffs filed their action.

## 2. The Complaint

In their complaint, plaintiffs alleged they are persons who have been assessed and paid the transient occupancy tax or who are liable to pay it. Plaintiff Britt rented an apartment in Pomona, intending to stay there indefinitely. She lived in it, renting on a month-to-month basis, between March 1986 and November 1987. On September 1987 she was informed that she would be assessed the transient occupancy tax as of October 1, 1987. ■ ■ ■ ■ ■ She paid the tax in October 1987.[2]

Plaintiff Mayfield rents a room at a boarding house on a month-to-month basis and intends to stay there indefinitely. He has resided there since April 1986. He is liable for the transient occupancy tax.[3]

---

[1] The 1987 transient occupancy tax provided that for its purposes, "hotel," "occupancy," "transient," and "rent" were defined as follows.

"HOTEL. Any structure, or any portion of any structure, which is occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes, and includes any hotel, inn, tourist home or house, motel, studio hotel, bachelor hotel, lodging house, rooming house, public or private club, recreational vehicle park, or other similar structure or portion thereof."

"OCCUPANCY. The use or possession, or right to the use or possession of any room or rooms or portion thereof, in any hotel for dwelling, lodging or sleeping purposes."

"TRANSIENT. Any person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement in a hotel as defined [in article VII]."

"RENT. The consideration charged, whether or not received, for the occupancy of space in a hotel valued in money, whether to be received in money, goods, labor or otherwise, including all receipts, cash, credits and property and services of any kind or nature, without any deduction therefrom whatsoever."

[2] Plaintiff Britt sought a refund of the tax she had paid. The City informed her there was no provision in the ordinance for refunds to persons paying the tax, (only to the operators of the hotels), and therefore she had no administrative remedy to exhaust if she wished to file an action. We also note that when a tax is a nullity as a matter of law, administrative remedies need not be exhausted. (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 378 [103 Cal.Rptr. 215].)

[3] Plaintiffs' opening brief states that at the time their action was filed, plaintiff Mayfield had not been assessed the tax but that, subsequently, the City began assessing him.

Plaintiff Miller rents a room at a motel and intends to remain there indefinitely. She has been there since November 1986 and has paid and is liable for the transient occupancy tax.

Plaintiffs alleged five causes of action in their complaint. In their first two causes of action they alleged a violation of their federal and state equal protection rights, stating that the transient occupancy tax imposes a burden on one group (transients) and not on another group (nontransients) and such burden affects transients without any rational basis reasonably related to a valid governmental purpose. Plaintiffs alleged that the transient occupancy tax is, on its face, overinclusive and as applied, both overinclusive and underinclusive, and therefore is arbitrary and impermissible. Plaintiffs also alleged that the transient occupancy tax discriminates against the poorest residents of the City. In their third cause of action, plaintiffs alleged a violation of article IV, section 16 of the California Constitution.

Plaintiffs' fourth and fifth causes of action were for violation of their federal and state due process protections. They alleged that the transient occupancy tax is void for vagueness on its face because it does not adequately and objectively define "transient" and that it is void as applied because it arbitrarily establishes a conclusive presumption that every person who resides in a "hotel" is a transient and therefore liable to pay the tax regardless of that person's intent to remain indefinitely in such residence.

Plaintiffs prayed for, among other things, a refund of the transient occupancy taxes they had paid, a declaration that the tax is void, and for an alternative writ of mandate.

### 3.  *The Demurrer*

The City demurrered generally to all five causes of action in the complaint and the demurrers were overruled. The City filed its answer in April 1988. In May 1988 the City amended its provisions for the transient occupancy tax. Thereafter, plaintiffs filed a first amended complaint, adding causes of action directed to that amendment. (Hereinafter, the 1988 version of the tax is referred to as the 1988 transient occupancy tax.)

### 4.  *The 1988 Transient Occupancy Tax*

The 1988 amendment changed the name of the tax from the "transient occupancy tax" to the "occupancy tax." In addition, the amendment changed the definitions of "hotel" and "occupancy" and it added a

definition of "lodger."[4] The amendment also changed the words "transient," "transients," and "transient's" to read "lodger," "lodgers," and "lodger's," except that the term "transient" remained in the amended definition of "hotel" and was used in the definition of "lodger."

Thus, the pertinent part of section 9-126 now reads as follows: "For the privilege of occupancy in any hotel, each lodger is subject to and shall pay a tax in the amount of eight percent of the rent charged by the operator. Said tax constitutes a debt owed by the lodger to the city which is extinguished only by payment to the operator or to the city. The lodger shall pay the tax to the operator of the hotel at the time the rent is paid."

### 5. *The Amended Complaint*

The first five causes of action in the verified amended complaint are directed to the 1987 transient occupancy tax and are similar to the five causes of action in the original complaint. Counts six through ten present similar constitutional challenges to the 1988 transient occupancy tax. Plaintiffs sought the same relief as they did in their original complaint.

### 6. *The Second Demurrer*

The City filed a demurrer to the amended complaint and it was sustained without leave to amend. The trial court's minute order states: "The clarifications as set forth in the ordinance are constitutional. The taxes are supported by a rational basis to achieve a legitimate city government objective."

Thereafter, an order of dismissal was entered, and plaintiffs filed this timely appeal.

---

[4] The 1988 amendment provided for the following definitions.

"HOTEL. Any structure, or any portion of any structure, which is occupied or intended or designed for occupancy by transients for lodging purposes, and includes any hotel, inn, tourist home or house, motel, studio hotel, bachelor hotel, lodging house, rooming house, public or private club, recreational vehicle park, apartment house (lodging accommodations only) or other similar structure or portion thereof."

"OCCUPANCY. The use or possession, or the right to the use or possession of any room or rooms or portion thereof, in any hotel for lodging purposes."

"LODGER. Any person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement in a hotel as defined above. Except as hereinbelow provided such entitlement to occupancy does not include a tenancy contract. If the hotel is located in a zoning district which permits transient lodging accommodations and prohibits other residential uses, then it shall be conclusively presumed that a lodging relationship exists for purposes of this Article."

Contentions on Appeal

On appeal, plaintiffs make the same contentions they did in the trial court. They argue that the 1987 and 1988 versions of the transient occupancy tax violate state and federal equal protection and due process laws and violate article IV, section 16 of the state Constitution.

Plaintiffs state in their brief that they concede the right of the City, as a charter city, to enact revenue-raising measures and to draw legislative classifications pursuant to this revenue raising. They also state that they do not contest the validity of the transient occupancy tax as it existed prior to the 1987 amendments.

Discussion

1. *Analysis of the Taxes*

Under the terms of the 1987 transient occupancy tax, any "transient" living in a "hotel," that is, in a structure intended for transients, was liable for payment of the City's transient occupancy tax. However, since the 1987 ordinance defined "transient" as anyone who occupies a portion of a "hotel," the effect was that all persons living in "hotels" were subject to payment of the transient occupancy tax, whether they were indeed transients, in the true sense of the word, or whether they intended to remain in the "hotel" on an indefinite basis. Thus, persons who had been residing in these "hotels" for years were subject to payment of a transient occupancy tax.

The 1988 amendments to the transient occupancy tax modified this state of affairs somewhat. Under the current law, a "lodger" (the word substituted for "transient") would not have to pay the transient occupancy tax if such person lives in a "hotel" under a tenancy contract.

Thus, a person who resides in a "hotel" can avoid the tax by taking the premises on a week-to-week tenancy basis. This is true whether such person is a transient, having no intention of staying past a few weeks, or is really a long-term resident of the "hotel." However, if the "hotel" is located in an area where long-term residency is prohibited but transient lodging is allowed, then the lodger will be conclusively presumed to be living in that "hotel" on a transient basis, even if such person has been there for a lengthy time and/or has the intention of remaining there indefinitely.

In summary, under both the 1987 and the 1988 amendments to the transient occupancy tax, some persons living in the City who were not transients would have to pay the transient occupancy tax, while some

persons who clearly were transients would not have to pay it. Whether the payment was required depends on the type of building the person lives in, the arrangement such person has with the owner for payment of the rent and the location of the "hotel." Curiously, what payment of the transient occupancy tax does not necessarily hinge upon is the true transient status of the prospective payee. Additionally, we note that only occupants of transient-type housing are affected by the taxes. Occupants of apartments and houses are not required to pay it. We will first examine this state of affairs under plaintiffs' equal protection challenge.

### 2. Equal Protection Issues

#### a. Equal Protection Requirements

■ Both the Fourteenth Amendment of the federal Constitution and article I, section 7 of the state Constitution prohibit denial to persons of the equal protection of the laws. These constitutional provisions require that persons who are similarly situated receive like treatment under the law and that statutes may single out a class for distinctive treatment only if that classification bears a rational relationship to the purposes of the statute. Thus, if a law provides that one subclass receives different treatment from another class, it is not enough that persons within that subclass be treated the same. Rather, there must be some rationality in the separation of the classes. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

■ In examining the propriety of a tax, the "rational basis" test is applied. Under that test, courts will look for a rational basis for the class of persons selected to pay the tax. Additionally, the classification must bear a reasonable relation to a legitimate governmental purpose. Arbitrary and capricious classifications are not permitted. (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove, supra,* 27 Cal.App.3d 372, 379 [hereinafter referred to as *John Tennant Memorial Homes*].) The persons who are to *pay* the tax must be a "reasonably justifiable subclassification" of persons; otherwise, "the operation of the tax must be such as to place liability therefor equally on all members of the class. [Citations.]" (*Gowens* v. *City of Bakersfield* (1960) 179 Cal.App.2d 282, 285-286 [3 Cal.Rptr. 746] [hereinafter referred to as *Gowens I*; the tax at issue in *Gowens I* was later amended and was then unsuccessfully challenged in *Gowens* v. *City of Bakersfield* (1961) 193 Cal.App.2d 79 [13 Cal.Rptr. 820], hereinafter referred to as *Gowens II*].)

#### b. The "Subclassification" at Issue Here

■ Although both the 1987 and 1988 transient occupancy taxes make references to transients and "transient lodging accommodations," the City

argues that neither of these ordinances has to do with taxing transiency itself. The City attempts to validate the taxes by distinguishing between what it calls two different types of occupancy taxes, one of which focuses on persons and the other on property.

According to the City, the first type of ordinance taxes the user of transient-type property because such user is a *transient* user; the second type taxes the use of transient-type accommodations, not because of the status of the user but because the accommodations are meant for transients. According to the City, under the first type of ordinance, the user pays the tax only for so long as the user remains a transient, as that term is defined in the particular ordinance. Under the second type of ordinance, the tax is paid for the entire period of occupancy.

The City states that it has not really enacted a "transient" tax because it does not per se tax a subclassification of persons, i.e., "transients." Rather, contends the City, it has enacted the second type of tax which is based on a subclassification of accommodations, not persons. That subclassification is transient-type accommodations. (Thus, argues the City, there is no need to put time limitations in the ordinance.) Because the concept of equal protection addresses *persons,* we will designate the subclassification under scrutiny here as "persons who reside in transient-type housing."

### c.   *Application of the Rational Basis Test*

#### (1)   *The Absence of a Rational Basis for the Subclassification Chosen by the City*

The instant case is governed by *Gowens I, John Tennant Memorial Homes* and *Kelly* v. *City of San Diego* (1944) 63 Cal.App.2d 638 [147 P.2d 127] (hereinafter referred to as *Kelly*). In each of those cases, the challenged taxes involved real property and the defendant-cities sought to impose the taxes not on the *owners* of the property but on the plaintiff-*occupants* of the property. Additionally, the defendant-cities tried to tax some occupants of housing but not others. In each case, the courts rejected these attempts on equal protection grounds. The courts held that the taxing distinction made between those occupants lacked a clear, reasonable and constitutional base and was therefore violative of equal protection. (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove, supra,* 27 Cal.App.3d at pp. 379-381; *Gowens* v. *City of Bakersfield, supra,* 179 Cal.App.2d at pp. 285-286; *Kelly* v. *City of San Diego, supra,* 63 Cal.App.2d at pp. 641-645.)

Just as there was no reasonable basis for distinguishing between retirees who live in nonprofit retirement homes and those who live in other types of

retirement homes (*John Tennant Memorial Homes*), just as there was no reasonable basis for distinguishing between temporary lodgers who stayed in a lodging place that offered space for five or more persons and those who stayed in a place that was smaller (*Gowens I*), and just as there was no reasonable basis for distinguishing between persons who make their homes in trailers and those who live in hotels, lodging houses, apartments and houses (*Kelly*), so also there is no rational basis for the subclassification promoted by the City here—persons living in transient-types of accommodations.

In *Gowens I* the court stated: "In the case at bar all persons obtaining lodging in establishments containing less than five accommodations are completely exempt. While classifications based on size of a business may under some special conditions be reasonable and valid, such a classification *when viewed from the standpoint of the consumer (here the lodger)* does not appear to have any reasonable basis whatever . . . . He is not, for our purposes, in a business. This in not an occupational tax. [Citation.] The tax is on a privilege of occupancy of a single lodging. While a lodger may have many desires, his three basic needs are normally cleanliness, comfort and quiet. Whether he will want to stay in a large hostelry or a small one, whether he may desire additional entertainment or service, will depend on personal preference and habits, but we can find no reasonable distinction *for tax purposes from the viewpoint of a lodger* between one seeking and using a large hostelry capable of accommodating many people and a small one accommodating a lesser number. The ordinance clearly violates the constitutional requirements of uniformity of intended application." (*Gowens* v. *City of Bakersfield, supra*, 179 Cal.App.2d at p. 286, italics added.)

So also the tax at issue in *Kelly*, when examined from the viewpoint of the persons who had to pay it, was determined to be based on a subclassification that was not reasonably justifiable. Under that ordinance, persons who resided in trailers in the City of San Diego had to pay a tax of 10 cents per day, while no such tax was imposed on "transients living in hotels or lodging houses or persons without property taxable by the city [*sic*] of San Diego who occupy furnished apartments and furnished houses." (*Kelly* v. *City of San Diego, supra*, 63 Cal.App.2d at p. 641.)

The court called the ordinance a tax on occupancy and stated that "What might be the basis of a valid division of owners into classes cannot serve as the foundation for a lawful classification of an entirely different class, namely occupants." (*Kelly* v. *City of San Diego, supra*, 63 Cal.App.2d at p. 644.) The court said "The license tax involved here has nothing to do with ownership of property. It is a charge imposed on the right of certain people to occupy a certain kind of dwelling that affords some protection from the

elements. It is a tax on occupancy. The house, apartment, hotel or lodging furnishes protection from the elements as does the trailer. We can see no valid distinction, for the purpose of classification, between the occupancy of a trailer and the occupancy of a permanent structure except perhaps the greater comfort and convenience of the latter and the higher rent paid." (*Id.* at pp. 643-644.) The court went on to state that such comfort "furnishes no ground for distinction and for exempting the more fortunate from the charge while imposing it on their less fortunate neighbors." (*Id.* at p. 645.)

The same can be said for the taxes at issue here. They make a classification which, from the standpoint of the plaintiffs and the other persons required to pay those taxes, is not reasonable. While plaintiffs' circumstances (economic or otherwise) may prevent them from renting apartments and houses, their basic needs are the same as those of persons who do live in these more traditional forms of housing and who do not have to pay the taxes. The above quoted analysis from *Kelly* is equally applicable here. We hold that there is no rational basis for the subclassification of persons selected by the City to pay the 1987 and 1988 transient occupancy taxes, i.e., persons who live in "transient-type" accommodations.

We also note that even if the classification of the person paying the tax were that of "transient," the 1987 and 1988 versions of the transient occupancy tax fail under *Gowens II* because they have no time element which defines when a person is no longer a transient.[5] Thus, a person who resides in a "hotel" with an intention of living there indefinitely is as subject to the tax as is one who intends to live there for only a short period of time. Further, as noted above, some persons who are truly transient can be exempted from the tax simply by paying their lodging fees on a tenancy basis.

(2) *The Absence of a Reasonable Relation Between the Subclassification and the Proferred Legislative Purposes*

Besides failing to pass the equal protection requirement of a rational basis for the subclassification it chose to tax, the City also fails to pass the other requirement for equal protection of the law. The City's classification of transient-type accommodations is not rationally related to the achievement of the legitimate governmental objectives set out by the City in its brief on appeal. For example, while the tax helps pay for the services which the City provides to persons who reside within its boundaries, those same

---

[5] In *Gowens II,* the taxing ordinance was to be applied only to transients who, under the amendments made after *Gowens I,* were defined by the ordinance as persons who obtain lodging for not more than 30 consecutive days. The *Gowens II* court held that the transient classification was proper and that the burden of the tax [as amended after *Gowens I*] fell equally on all members of the class. (*Gowens* v. *City of Bakersfield, supra*, 193 Cal.App.2d 79.)

services are provided to all persons who occupy housing not owned by them, whether they live in transient-type housing or not. Yet, the tax is imposed on only a portion of those persons and therefore does not treat similarly situated persons equally. (Cf. *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove, supra,* 27 Cal.App.3d at p. 379.)

Second, the City states that it wishes to (1) maintain the integrity of its overall zoning plans to avoid environmental pollution and population pollution and (2) discourage long-term occupancy of transient-type accommodations because of (unspecified) health and safety problems which result from continued use of facilities which were not designed to be used at length. However, its prescription for doing so logically fails since not all residents of "hotels" have to pay the tax. Some persons living in such accommodations will pay no transient occupancy tax if they have a tenancy arrangement with the owner of the hotel and live in certain zoned areas. In addition, the tax law does not *prohibit* persons from residing in "hotels" for extended periods of time. Clearly, anyone with the financial ability to pay the tax can continue to reside in a "hotel" indefinitely.

### 3. *Due Process Issues*

#### a. *Due Process Requirements*

■ Our federal and state courts have held that due process of law is violated by "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; accord *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257].) Thus, a statute will pass muster, "if it (1) gives fair notice of the practice to be avoided, and (2) provides reasonably adequate standards to guide enforcement. [Citations.]" (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 702 [209 Cal.Rptr. 682, 693 P.2d 261] affd. (1986) 475 U.S. 260 [89 L.Ed.2d 206, 106 S.Ct. 1045].)

■ Plaintiffs argue that the 1987 and 1988 versions of the transient occupancy tax are so vague that citizens cannot determine how to avoid the tax and the City cannot avoid arbitrary enforcement.

#### b. *Application of Due Process Principles to the 1987 Tax*

Plaintiffs contend that the provisions of the 1987 tax are vague for two reasons. First, the text of the law, which appears to be directed at transients, in actuality includes persons living in "hotels" who, like the plaintiffs, are

not in fact transients. Second, the law appears to require the tax to be paid by all persons living in the "hotels," even those living there under a fee interest in the hotel, since all "transients" have to pay the tax and "transients" are defined as persons who exercise occupancy in a "hotel" by reason of "concession, permit, right of access, license *or other agreement* . . . ." We agree with both contentions.

The 1987 ordinance sends mixed signals. Section 9-126 of that ordinance states that "transients" have to pay the tax; but in its definitions of "hotel" and "occupancy," the ordinance includes the word "dwelling."

To "dwell" means "to be or continue in some state or condition." A "dwelling" is "a building or construction used for residence." To "reside" is "to settle oneself or a thing in a place: be stationed: remain, stay." A "resident" is "one who dwells in a place for a period of some duration." (Webster's New Internat. Dict. (3d ed. 1981) pp. 706, 1931.)

Thus, the text of the ordinance appears to address both transients and persons in residence. Further complicating the matter is the fact that the definition of "transient" is of no guidance. Under the 1987 transiency occupancy tax, a "transient" is one who occupies a "hotel," while a "hotel" is a structure which is occupied or intended to be occupied by "transients." The definitions are circular. Given these problems, one can reasonably conclude that the 1987 version of the transiency occupancy tax does not "give fair notice" of who exactly is to pay the tax nor does it provide "reasonably adequate standards to guide enforcement." (*Fisher* v. *City of Berkeley, supra*, 37 Cal.3d at p. 702.)

Additionally, as plaintiffs argue, under the definition of "transient," even someone who owns a fee interest in a "hotel" must pay the tax to the City if she or he resides in it and pays some sort of "rent" to the hotel.

c. *Application of Due Process Principles to the 1988 Tax*

The 1988 version of the transient occupancy tax suffers from the same vagueness problems, plus additional ones. Although the current law substituted "lodger" for "transient" in most of its provisions, the substitution does not eliminate the problem of vagueness. Webster's definitions of "lodger" and "lodging" include *both* temporary and continuous living arrangements. (Webster's New Internat. Dict., *supra*, at p. 1329.) Additionally, although the 1988 version of the tax removes the phrase "dwelling purposes" from the ordinance's definitions of "hotel" and "occupancy," (a phrase which indicates continuous living arrangements) it also removed the phrase "sleeping purposes" from the same definitions. "Sleeping purposes"

indicates temporary living arrangements. Thus, when the phrase "dwelling, lodging or sleeping purposes" was amended to read "lodging purposes," the net result was that ordinance remains ambiguous as to who is to pay the tax.

Although the 1988 amendments exclude lodgers who occupy the "hotel" on a tenancy basis, a lodger could be a longtime occupant of the "hotel" and still not live there on a tenancy basis. Not everyone has the financial means to pay their rent even a week at a time each and every week.

Finally, the 1988 tax is also vague because it establishes a conclusive presumption with respect to duty to pay the tax without defining an important term used in the language of the ordinance which establishes the presumption. The 1988 ordinance states "If the hotel is located in a zoning district which permits transient lodging accommodations and prohibits other residential uses, then it shall be conclusively presumed that a lodging relationship exists for purposes of this Article." The phrase "transient lodging accommodations" is not defined in the ordinance, and given the City's removal of the prior 60-day and 30-day definitions of what constitutes a transient, one cannot rationally conclude what exactly the City means by "transient lodging accommodations."

### 4. The Violation of Article IV, Section 16 of the California Constitution

Section 16 of article IV of the California Constitution (formerly art. I, § 11) provides in part: "(a) All laws of a general nature have uniform operation." This provision is substantially equivalent to the equal protection clause of the Fourteenth Amendment of the federal Constitution.[6] (*Dept. of Mental Hygiene* v. *McGilvery* (1958) 50 Cal.2d 742, 754 [329 P.2d 689] disapproved on another point in *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 723 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353].) Since we have concluded that the 1987 and 1988 transient occupancy taxes violate principles of equal protection, we also conclude that those same taxes violate article IV, section 16 of the California Constitution.

---

[6] Contrary to the City's assertion, article IV, section 16, subdivision (a) has not been applied solely to state statutes. In *Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 649 [199 Cal.Rptr. 72] it was applied to a city ordinance.

## DISPOSITION

The order of dismissal is reversed, and the cause is remanded for further proceedings consistent with the opinions expressed herein. Costs on appeal to plaintiffs.

Klein, P. J., and Danielson, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 28, 1990.